STATE v. CLAYTON REICHENBERGER.

182 N. W. (2d) 692.

December 31, 1970—No. 41585.

*C. Paul Jones*, State Public Defender, and *Roberta K. Levy*, Assistant State Public Defender, for appellant.

*Douglas M. Head*, Attorney General, *James M. Kelley*, Assistant Attorney General, *J. Jerome Kluck*, County Attorney, and *John O. Sonsteng*, Assistant County Attorney, for respondent.

Heard before Knutson, C. J., and Otis, Rogosheske, Peterson, and Rosengren, JJ.

CHESTER G. ROSENGREN, JUSTICE.*

Appeal by defendant, Clayton Reichenberger, from a judg-

---

*Acting as Justice of the Supreme Court by appointment pursuant to Minn. Const. art. 6, § 2, and Minn. St. 2.724, subd. 2.

ment of conviction for the offense of carnal knowledge of a child as prohibited by Minn. St. 1965, § 617.02. Appellant entered a plea of not guilty to the offense charged in the information. A jury was impaneled and on June 5, 1967, returned a verdict of guilty as charged. Imposition of sentence was stayed, and defendant was placed on probation for a period not to exceed 5 years. Thereafter the court, due to defendant's violation of conditions of probation, vacated its previous stay of imposition of sentence and, following a hearing, ordered defendant sentenced to the Youth Conservation Commission for an indeterminate term.

On the present appeal, defendant argues first that there was adduced at trial insufficient evidence to support a guilty verdict. The evidence introduced at the trial is, in essence, as follows:

On the evening of March 1, 1967, the defendant was present with a group of young people at a home in St. Paul Park. The group began drinking beer about 6:30 p. m. that evening, and it appears that by about 1:30 a. m. the defendant had consumed some 15 bottles of beer. About 10:30 p. m. prosecutrix in this case arrived at the home with a girl friend. At that date, prosecutrix was 13 years of age. She drank some beer and about 1:30 a. m. she left with defendant and three other young people to get something to eat. They drove around for awhile and when they arrived at the Glenview Bar and Grill in South St. Paul, the others left the car to go into the restaurant.

Prosecutrix testified that she wanted to go into the restaurant, but defendant, with whom she was sitting in the back seat, grabbed her arm and said, "No, you can't go." Some time later, the police arrived on the scene and found the girl and defendant partially unclothed in the back seat of the car, with defendant lying on top of the girl. The officer rapped on the window, but failed to obtain any response. The driver of the car returned, got the attention of the couple inside, and told them that the police were there. Finding beer in the car also, the officer began to take

defendant, the girl, and the driver to the police station. En route, defendant jumped out of the police car and attempted to escape. When apprehended by police, he fought, biting the arresting officer on the finger and the leg. Defendant was subsequently charged with carnal knowledge of a child.

The foregoing evidence is not in serious dispute. But defendant claims that the state did not introduce sufficient evidence to sustain a determination that sexual intercourse did in fact take place. In this regard, defendant points to the absence of any corroborating medical examination and to claimed inconsistencies in the testimony of both the prosecutrix and the arresting officer.

At the preliminary hearing, the arresting officer testified that when he looked into the car, he saw prosecutrix with her dress up to her waist, although she testified that she was wearing slacks on the night in question. The officer testified that he saw a slight movement inside the car, but other testimony, including that of prosecutrix, indicated that defendant was asleep when the officer approached.

The prosecutrix in this case at various times made conflicting statements as to whether intercourse had in fact taken place. Initially she told police that she had not engaged in sexual intercourse. However, when informed that a medical examination would show whether there had been intercourse, she changed her story and told police that there had been intercourse, and no medical examination was made. Some months later, she told her mother and defendant's attorney either that she had not had intercourse with defendant or that she could not remember. At the trial, however, prosecutrix stated positively that there had been intercourse and that she had given the contrary statements because she had received threatening telephone calls.

Defendant argues that there were some portions of the prosecutrix' testimony tending to indicate that penetration may have been accomplished by a finger rather than by the male organ. An examination of that testimony, however, indicates that it was

made in reference to statements which she had made to defendant's attorney prior to trial—statements which were later repudiated as having been made in claimed trepidation induced by threatening telephone calls. Moreover, the prosecutrix later stated that defendant had had both of his arms around her, implying that a finger could not have been used. She testified that there was blood on her underwear and semen between her legs.

A reading of the trial transcript discloses that although there were inconsistencies in the statements given by prosecutrix, those inconsistencies were brought to the attention of the jury by both prosecution and defense counsel. Despite such inconsistencies, the jury found the defendant guilty.

■ It is well settled that on an appeal challenging the sufficiency of the evidence leading to conviction, the scope of our review is limited to ascertaining whether, under the evidence contained in the record, the jury could reasonably find the defendant guilty of the offense charged. If the jury, acting with due regard for the presumption of innocence and for the necessity of overcoming it by proof beyond a reasonable doubt, could reasonably conclude that defendant was proved guilty of the offense charged, a reviewing court will not disturb its verdict. State v. Norgaard, 272 Minn. 48, 136 N. W. (2d) 628. In reaching that determination, the reviewing court must view the evidence in the light most favorable to the jury's verdict. State v. Kline, 266 Minn. 372, 124 N. W. (2d) 416, certiorari denied, 376 U. S. 962, 84 S. Ct. 1124, 11 L. ed. (2d) 980. In the case at hand, it is apparent from an examination of the record that the evidence was sufficient to support a verdict of guilty. There is ample direct testimony from the prosecutrix to convict defendant of the crime charged. The witness did make some prior statements which were not consistent with her testimony at trial. The jury was apprised of those facts, however, and the task of weighing credibility was for the jury, not this court. We have previously held, in a case also involving a charge of carnal knowledge, that weighing the credibility of a complaining witness who had given con-

flicting stories is a function for the jury. State v. Castle, 260 Minn. 293, 109 N. W. (2d) 593, certiorari denied, 368 U. S. 978, 82 S. Ct. 481, 7 L. ed. (2d) 439. Moreover, we have also held in another opinion involving carnal knowledge that the absence of a physical examination, although a circumstance in defendant's favor, does not prevent the jury from making a finding of guilt. State v. Beaudette, 168 Minn. 444, 210 N. W. 286. On the record in this case, we are constrained to hold that the evidence is sufficient to sustain the conviction.

The second issue raised by defendant on this appeal is a contention that a fair trial was denied by the alleged refusal by the prosecutor to permit defense counsel to interview the prosecutrix privately. Defendant argues that because conviction was wholly dependent upon testimony of the prosecutrix, in so far as only she could testify as to the element of penetration, it was error to deny his attorney visitation with the girl. This argument must be rejected for two reasons. In the first place, it is not apparent that defense counsel was denied effective opportunity to interview the prosecutrix. Apparently, no attempt to contact her was made until the day before trial, at which time defense counsel twice spoke with her by telephone. On the day of trial, defense counsel indicated to the prosecution that he wished to speak with the witness. The prosecuting attorney told him that he would agree to the interview if defense counsel would permit him to be present and would first advise him regarding what he desired to discuss with the young lady. Defense counsel apparently responded negatively to those terms, and no interview took place that day. It is apparently this exchange on the day of trial which defendant now contends amounted to denial of the opportunity to interview the complaining witness, for nowhere is it asserted that the prosecution had previously denied the defense such opportunity. On the facts of this case, we cannot conclude that the defense was denied the opportunity to interview the witness. Were it established that the prosecution had instructed the witness not to talk to the defense and thereby had prevented access

to information, a serious question might be presented. That is not the situation here. It is significant that the defense brought this matter to the court's attention the day of trial, before the jury was impaneled, and was advised by the court simply to ask the parents whether he could visit with their daughter. The court also told defense counsel that if the parents refused, this would be their privilege. Thus, it appears that the defense was not in fact denied access to the witness. The "conditions" of which defendant complains were not set by the prosecution until the day of trial—the same day when the defense obtained the foregoing advice from the trial court. It is not suggested that the witness was under any obligation to speak to the defense counsel, and we are in agreement with the trial court that if her parents had refused to permit an interview the day of trial, this would have been their privilege. Moreover, it is admitted that defense counsel did speak to the girl by telephone twice and, as is apparent from the record, used her statements then made in subsequently attempting to impeach her testimony at trial.[1]

---

[1] This conclusion conforms with A. B. A. Project on Standards for Criminal Justice, Standards Relating to the Prosecution Function and the Defense Function (Tentative Draft), § 4.3, *Commentary* c, which reads:

"Prospective witnesses are not partisans; they should be regarded as impartial spokesmen for the facts as they see them. Because witnesses do not 'belong' to either party, it is improper for a prosecutor, defense counsel, or anyone acting for either to suggest to a witness that he not submit to an interview by opposing counsel. It is not only proper but it may be the duty of the prosecutor and defense counsel to interview any person who may be called as a witness in the case (except that the prosecutor is not entitled to interview a defendant represented by counsel). In the event a witness asks the prosecutor or defense counsel, or a member of their staffs whether it is proper for the witness to submit to an interview by opposing counsel or whether he is under a duty to do so, the witness should be informed that, although he is not under a legal duty to submit to an interview, it is proper and may be the duty of both counsel to interview all persons who may be witnesses and that

On the record presented, therefore, we must conclude that defendant's contentions in this regard are without merit.

■ Defendant further argues that he has been denied equal protection of the law. The basis for this assertion is that prosecution here amounted to discriminatory enforcement of the criminal law because others guilty of this offense have gone unpunished. However, failure to prosecute others allegedly equally guilty does not by itself constitute a denial of equal protection. Prosecution for this offense was authorized by statute, and defendant has received fair and impartial treatment in court. Reference is made to the circumstances of the case, such as the youthfulness of the defendant and the apparent consent of the girl. Under the relevant statute, however, those factors have no bearing upon the elements of the offense. Moreover, such factors were considered by the trial court in its initial sentencing decision when it granted probation. There is nothing in the record before us which would establish any abuse of prosecutorial discretion from which it could be concluded that the defendant has been denied the equal protection of the laws. State v. Andrews, 282 Minn. 386, 165 N. W. (2d) 528; Newman v. United States, 127 App. D. C. 263, 382 F. (2d) 479. Hence, we find no merit in this contention.

■ Finally, it is argued that defendant was denied a fair trial by the introduction of evidence said to be inflammatory and prejudicial. Specifically, it is asserted that prejudice resulted from introduction of the facts of defendant's knowledge of the

---

it is in the interest of justice that the witness make himself available for interview by counsel.

"Counsel may properly request an opportunity to be present at opposing counsel's interview of a witness, but he may not make his presence a condition of the interview. It is proper to call the attention of the witness to the problem of subscribing to a statement prepared by another person. In the event that a written statement is signed or otherwise acknowledged by the witness as a correct representation of facts known to the witness, a copy of the statement should be furnished the witness at his request."

girl's age, the details of defendant's attempted escape, and the threatening telephone calls. The testimony as to threatening telephone calls was clearly material in so far as it cast light upon the changes in testimony of the prosecutrix. Similarly, testimony of an attempted escape tends to establish consciousness of guilt. State v. Meany, 262 Minn. 491, 502, 115 N. W. (2d) 247, 255. Although defendant's knowledge of the girl's age was not relevant to the offense, we cannot conclude that introduction of such testimony was in any way prejudicial, particularly when it was otherwise established that defendant was well acquainted with the girl. To a very great degree, whether evidence should be excluded as unduly creating prejudice is a matter for the judicial discretion of the trial court and we cannot conclude that the trial court's actions in this case in any way constituted reversible error. The conviction is accordingly affirmed.

Affirmed.

