**STATE of Minnesota, Respondent,**

v.

**Carl E. WHITE, Appellant,**

**No. C9–86–1919.**

Court of Appeals of Minnesota.

Aug. 18, 1987.

Review Denied Oct. 21, 1987.

Hubert H. Humphrey, III, Atty. Gen., St. Paul, Thomas L. Johnson, Hennepin Co. Atty., Vernon E. Bergstrom, Paul R. Jen-

nings, Asst. Co. Attys., Minneapolis, for respondent.

C. Paul Jones, State Public Defender, Steven P. Russett, Asst. State Public Defender, St. Paul, for Appellant.

Considered and decided by NIERENGARTEN, P.J., and FOLEY and RANDALL, JJ., with oral argument waived.

## OPINION

NIERENGARTEN, Judge.

Appellant Carl White appeals his conviction of first degree criminal sexual conduct. We affirm.

## FACTS

On the evening of January 29, 1984, K.H. left her home intending to walk to a friend's house. She accepted a ride from a man driving a maroon-colored car. She talked and smoked Benson & Hedges cigarettes with the driver, "Kevin", and agreed to ride around with him. They left the downtown Minneapolis area, eventually passing a Sperry Univac facility where they parked behind a building with some white tanks. Kevin told K.H. to remove her clothes. K.H. objected and started to walk away from the car but was struck on the back of her head by a fist and knocked to the ground. She saw Kevin holding a tire wrench in his hand. Kevin ordered K.H. back into the car and told her to remove her clothes. When K.H. established she was menstruating by removing her tampon and discarding it outside the car, Kevin said he would take her home.

Instead, Kevin parked behind an old building in the downtown area and told K.H. to perform oral sex on him. Although K.H. complied for a few moments, Kevin ordered K.H. into the back seat, told her to remove her clothes, and then had sexual intercourse with her. Kevin later drove K.H. back to the street where he picked her up. K.H. noted the license plate number as Kevin drove away.

When K.H. returned to her apartment she did not wake her boyfriend but called the police to whom she explained the details of the assault, described Kevin's clothes and physical characteristics, his car, and its license plate number. K.H. also described several items in Kevin's car including a speedometer with large lettering, an orange disc with the word "stop" hanging from the rear view mirror, a maroon pillow, soft seats, and an empty glove compartment.

A hospital sexual assault examination did not indicate any injuries or bruises and there was no evidence of semen. K.H.'s clothing was not torn or scuffed.

The car was registered to Carl White's sister-in-law. White's brother told the police he had lent the car to White who later was arrested at his parents' restaurant when he arrived driving the car.

The car was impounded and searched, and several items were seized from the car including an orange disc with the word "stop" hanging from the rear view mirror, a maroon pillow, and several Benson & Hedges cigarette butts from the ashtray. The police did not find a tire wrench in the car. A lab analysis of a stain on the back seat showed that the stain did not contain either blood or seminal fluid. None of K.H.'s fingerprints were found in the car. Analysis of the nine cigarette butts indicated that seven cigarettes were smoked by a blood type O "nonsecretor." White is a blood type O nonsecretor. One of the cigarettes was smoked by a blood type O secretor. K.H. is a blood type O secretor.

White voluntarily told the police he had been driving the car for the past month, but that he had not loaned the car to anyone other than his girlfriend. He denied knowing K.H. White said that he went to his parents' restaurant at about 6:00 p.m. on January 29 to prepare meat, left the restaurant at about 8:30 p.m. and drove to a bar where he stayed until 11:15 or 11:30, and then returned to the restaurant where he stayed for about forty-five minutes, arriving home about 12:30 a.m.

On February 3, K.H. identified White from a lineup consisting of White and five other black males. Although K.H. initially told the police her assailant did not have

any facial hair, her formal statement to the police indicated that her assailant had a beard. White had a small beard. The police attempted to locate the building with the white tanks where K.H. said she discarded her tampon. Although they could not find that site, they did locate the place where the actual assault occurred.

White was charged with two counts of criminal sexual conduct. He pled not guilty and asserted an alibi defense claiming he was preparing meat at his parents' restaurant on the night of the assault. His parents testified that they talked to White in the restaurant between 7:30 and 7:45 p.m. on their way to church but did not see White at the restuarant when they returned home at about 10:00 p.m. The next day the meat, which required five hours preparation, was prepared as usual and was in the refrigerator. White's girlfriend testified White arrived home at about 12:30 a.m.

White was convicted of first degree criminal sexual conduct.

## ISSUES

1. Was the appellant denied due process of law when the trial court excluded evidence of the victim's venereal disease and failed to strike the victim's identification testimony?

2. Did the prosecutor's statements during closing argument deny the appellant his right to a fair trial?

3. Was the evidence sufficient to support the appellant's conviction of first degree criminal sexual conduct?

4. Did the sentencing court err by denying the appellant's motion for a downward departure from the presumptive sentence under the sentencing guidelines?

## ANALYSIS

### 1. Due Proces Claims

White claims he was denied due process of law because the trial court excluded evidence that K.H. had a venereal disease at the time of the assault. He also argues that the trial court should have striken K.H.'s identification testimony.

### Excluded Testimony

■ A criminal defendant must be provided a meaningful opportunity to present a complete defense. *California v. Trombetta*, 467 U.S. 479, 485, 104 S.Ct. 2528, 2532, 81 L.Ed.2d 413 (1984). Persons accused of crimes may be denied due process rights if material exculpatory evidence is not presented to the jury. *Brady v. Maryland*, 373 U.S. 83, 87, 83 S.Ct. 1194, 1196, 10 L.Ed.2d 215 (1963).

■ K.H. had gonorrhea of the anal area at the time of the assault. White's test results for veneral disease were negative. White argued that the evidence of K.H.'s gonorrhea and his lack of veneral disease was admissible as probative evidence of the assailant's identity and White's lack of involvement. White asserted he was linked to the assault only by K.H.'s identification of White and the car. The State argued the evidence was irrelevant because there was no allegation of anal intercourse and that the evidence was prejudicial to K.H.

The record suggests the trial court decided the evidence was inadmissible because of foundation problems since mislabeled lab samples made it unclear whether K.H.'s venereal disease was located in the anal or vaginal area.

Under very limited circumstances, evidence of a victim's venereal disease might be admissible to prove identity. *See* Minn. R.Evid. 404(c)(1); *State v. Mason*, 152 Minn. 306, 310, 189 N.W. 452, 453 (1922) (the trial court could admit evidence of the victim's venereal disease to prove she was assaulted by the defendant who had venereal disease). However, evidence is not admissible unless it also is relevant. *See* Minn.R.Evid. 402. Even then, relevant evidence may be excluded "if its probative value is *substantially* outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury * * *." Minn.R.Evid. 403 (emphasis added). *See* Minn.R.Evid. 404(c)(2)(C) (evidence of a victim's previous sexual conduct may be admissible if "its probative value is not sub-

stantially outweighed by its inflammatory or prejudicial nature").

We cannot conclude that the court erred by excluding evidence of K.H.'s venereal disease. The relevancy of the evidence is questionable and, in light of the apparent mislabeling of test samples and the impossibility of retesting K.H. for venereal disease, we do not believe defense counsel could establish proper foundation for the evidence.

### Identification Testimony

■ Sometime between the initial mistrial of this case and the trial in August 1986, the State lost the photograph of the lineup from which K.H. first identified White as the assailant. The record does not indicate that the lineup was prejudicial or suggestive. At the Rasmussen hearing, the court had the lineup photograph before it, concluded there was nothing suggestive about the lineup procedures, and denied White's motion to suppress the identification testimony. The evidence did not possess "an exculpatory value that was apparent before the evidence was destroyed." *Trombetta*, 467 U.S. at 489, 104 S.Ct. at 2534. The trial court did not err by failing to strike K.H.'s testimony describing her out-of-court identification of White.

■ In addition the trial court did not err by refusing to strike K.H.'s in-court identification because, under the circumstances, we cannot conclude there was a "substantial likelihood of misidentification." *See Neil v. Biggers*, 409 U.S. 188, 201, 93 S.Ct. 375, 383, 34 L.Ed.2d 401 (1972). K.H. had ample opportunity to view White during the approximately two hours she spent with him, including time when she was not alarmed or suspicious. Although K.H. originally said White did not have a beard, she readily identified him when she viewed him at the lineup three days after the assault. *See State v. Reichenberger*, 289 Minn. 75, 79, 182 N.W.2d 692, 695 (1970) ("the task of weighing [witness] credibility was for the jury," not the appellate court); *State v. Beard*, 380 N.W.2d 537, 541 (Minn. Ct.App.1986), *pet. for rev. denied*, (Minn. Mar. 3, 1986) ("minor inconsistencies between [the victim's] testimony and her pre-

vious statements are not grounds for reversing the jury's guilty verdict").

### 2. Closing Argument

■ White also argues that the prosecutor improperly suggested to the jury that the State need not prove certain elements of the crime.

[T]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged.

*In re Winship*, 397 U.S. 358, 364, 90 S.Ct. 1068, 1073, 25 L.Ed.2d 368 (1970).

"[T]he state cannot shift to one accused of a crime the burden of proving his innocence." *State v. Townsend*, 259 Minn. 522, 529, 108 N.W.2d 608, 613 (1961). Although White argues it was improper and objectionable for the prosecutor to suggest during closing argument that certain elements of the crime might be deemed established because White denied any involvement in the assault, the argument did not deprive White of a fair trial. The prosecutor's references to White's prior statements to the police were not improper, and both the prosecutor and defense counsel told the jury on several occasions that the State has the burden of proving White's guilt beyond a reasonable doubt, that the State was required to prove White was the assailant, and that each of the elements of the crime had to be proven beyond a reasonable doubt. In addition, it appears that the statements were neither obvious nor important to defense counsel because he failed to object when the statements were made. *See State v. Spencer*, 311 Minn. 222, 230, 248 N.W.2d 915, 920 (1976). Further, at defense counsel's request, the trial court instructed the jury that White was not required to testify and that the jury should not draw any adverse inferences from the fact that White did not testify.

"The propriety of a prosecutor's final argument is a matter within the sound discretion of the trial court." *State v. Parker*, 353 N.W.2d 122, 127 (Minn.1984) (citation omitted). The trial judge is in the best position to determine whether an improper

statement has had an adverse effect on the jury. *See State v. Johnson,* 277 Minn. 230, 235, 152 N.W.2d 768, 772 (1967), *cert. denied sub nom., Johnson v. Minnesota,* 390 U.S. 990, 88 S.Ct. 1190, 20 L.Ed.2d 1297 (1968). The trial court's instructions adequately mitigated any adverse affect the prosecutor's statements might have had on the jury.

### 3. Sufficiency of the Evidence

■ White asserts that the evidence does not support his conviction of first degree criminal sexual conduct. A conviction may be upheld and the verdict of a trial court

> will not be disturbed where, upon review of the record, it appears that the evidence, direct and circumstantial, viewed most favorably to support a finding of guilty, was sufficient for the jurors to reach that conclusion.

*State v. Otten,* 292 Minn. 493, 494, 195 N.W.2d 590, 591 (1972) (citations omitted).

There is sufficient evidence from which the jury could conclude beyond a reasonable doubt that White was the assailant and guilty of first degree criminal sexual assault. K.H. was emotionally upset and crying after the assault; she reported the assault immediately; she described the assailant's car as well as several items in the vehicle; lab analyses indicated she could have smoked cigarettes found in the ashtray and the site where K.H. was assaulted was located. Finally K.H. positively identified White as the assailant when she viewed him at the police lineup three days after the assault. "On review, this court will assume that the jury believed the State's witnesses and disbelieved any contradictory testimony." *Beard,* 380 N.W.2d at 541.

### 4. Presumptive Sentence

■ White contends the sentencing court erred by denying his motion for a downward departure from the presumptive sentence under the sentencing guidelines because the court allegedly was unfamiliar with the specific facts of his case. The sentencing judge indicated that he imposed the guideline sentence primarily because he did not preside at White's trial and did not have an opportunity to hear the evidence or the facts presented at the trial.

The record indicates that the sentencing judge adequately apprised himself of White's circumstances and the facts of the case and reviewed the presentence investigation and psychological report. The judge did not abuse his discretion by declining to depart from the presumptive sentence.

### DECISION

The appellant was not denied due process of law when the trial court excluded evidence of the victim's venereal disease and refused to strike the victim's identification testimony. The prosecutor's closing arguments did not deprive the appellant of a fair trial because, under the circumstances, the jury was adequately apprised that the State had the burden of proving the appellant's guilt beyond a reasonable doubt. There was sufficient evidence from which the jury could conclude beyond a reasonable doubt that the appellant was the assailant and guilty of first degree criminal sexual conduct. The sentencing judge did not abuse his discretion by declining to depart from the presumptive sentence because the judge was sufficiently apprised of the facts and circumstances of the case.

Affirmed.

RANDALL, J., concurs specially.

RANDALL, Judge, concurring specially.

I concur specially. It would have been the better practice to allow appellant to produce the excluded evidence of the victim's venereal disease. The majority correctly points out in its opening paragraph that due process in a fair trial requires the right to present material exculpatory evidence to the jury. If the defendant's offer of proof is not perfect, but meets reasonable standards of materiality and relevance, the evidence should go to the jury for whatever weight the jury accords it. That happens frequently when a defendant strives to keep out so called *Spreigl* evidence of prior bad acts, and either the prosecution's notice of intent to produce *Spreigl* evidence or its foundation has a

modest gap, but the trial court finds that, overall, the evidence is relevant and should benefit the jury. The same should be true when a defendant offers such evidence.

In addition, a specific statute authorizes introduction of such evidence on the issue of identity. Minn.Stat. § 609.347, subd. 3(b) (1982). Appellant gave the requisite pretrial notice of his intention to present the evidence, pursuant to Minn.Stat. § 609.-347, subd. 4 (1982). Appellant's offer of proof was a statement that he had an expert ready to testify there was "good probability" that anal gonorrhea could be transmitted during vaginal intercourse. The prosecution argues that the notice and foundation were somewhat flawed because the medical reference test cited by appellant indicated the probability of transfer was twenty percent or, arguably, less. This argument goes only to weight, not admissibility. Had appellant been allowed to offer such evidence, it would have been perfectly proper for the prosecution to cross-examine appellant's expert or bring in its own experts to attempt to discredit the statistical evidence.

Minn.Stat. § 609.347, subd. 3(b) does not require the offered evidence of specific instances of sexual activity showing the source of disease to be "overwhelming" or "clear beyond a reasonable doubt." The statute sets no standard, but simply uses the term "evidence." Under the statute, such evidence of a sexual transmitted disease is admissible on the question of identity. Here, there was adequate evidence that appellant did not have gonorrhea, that the victim did, and that, if appellant had sexual intercourse with her, there was a statistical probability he would have contracted it. Unlike *State v. Dickson*, 297 Minn. 486, 209 N.W.2d 785 (1973), here there was medical evidence that appellant did not have the disease.

I suggest that, under our holding in *State v. Hagen*, 391 N.W.2d 888 (Minn.Ct. App.1986), *pet. for rev. denied* (Minn. Oct. 17, 1986),[1] the better course would have been to allow admission of appellant's evidence for whatever weight the jury would give it. However, because of the questions the prosecution raised on foundation, and because of the discretion afforded a trial court in assessing offers of proof and relevancy, I do not find reversible error.

Likewise, on issue 2, the allegation that the prosecutor's closing argument was so improper that appellant was denied his right to a fair trial, I would not find reversible error. In final argument and instructions, both counsel and the trial court gave the jury substantially correct instructions on burden of proof. However, I disagree with the majority's treatment of this issue. I find that the prosecutorial remarks in issue were the result of either inexperience or overreaching, and constituted blatantly improper and incorrect final argument.

In closing the prosecutor said, on the issue of burden of proof:

> Interesting enough though, and I will be touching upon this later, when the defendant said to the police officer, it wasn't me that did it, I don't know this woman, *he then took himself out of the position to be able to argue to you that there was no penetration or no consent* because he claims he wasn't even there. So the real issue in this case is whether we have the right man. *And that is the only issue in this case. So when K.H. told you that she was penetrated, you must take that as given. And when she said that this was without consent, that's also true.*

(Emphasis added).

It was absolutely improper for the prosecution to state to the jury that when K.H. testified she was penetrated, "you must take that as given." A jury in a criminal case never *has to* accept a victim's claim that he/she was penetrated, robbed, or beaten. Those are issues of credibility and proof for a jury to accept or disregard, whether or not the defendant takes the

---

1. "Where defendant charged with rape claims to have had no contact with complainant, evidence rule strictly limiting admissibility of evidence concerning rape victim's previous sexual conduct does not bar admission of evidence which is directly relevant to negate act with which defendant is charged."

stand in his own defense, and whether or not he puts forth any affirmative evidence. It was within the province of this jury to return a verdict of not guilty, either because they felt appellant was not the perpetrator and they believed his alibi, or because they disbelieved his alibi but, despite the victim's uncontradicted testimony, they did not believe the victim when she testified she was penetrated without consent.

The prosecution compounded the problem by telling the jury that since "she said" there was no consent on her part, it must be true. This again is blatantly improper argument. The jury is entitled to decide the issue of consent, if applicable, based on its own assessment of the victim's testimony, notwithstanding the fact that defendant did not take the stand and claim consent. The majority in its opinion did not set out the prosecutor's challenged statements verbatim. It glossed over them. In addition to the above, the prosecutor went on to state:

But through the cross-examination ... it sort of sounded like the defendant attorney was saying not only weren't we there but this didn't happen. Well, if he is not there he is in no position to claim one way or the other whether it happened. All he can say is he wasn't there, somebody else did it. So it's like him saying I wasn't there, but if I was, I didn't do it. I mean, you can't have it both ways. You can't play with the truth like that. And if you hear him saying I wasn't there but if I was there I didn't do it, then that's an inconsistent defense. You can't. The truth isn't something that you have alternative theories for. There is only one version of the truth.

Once again, the prosecutor overstepped the bounds of final argument. A defend-

ant can present to a jury alternative theories of defense which, on their face, are inconsistent, but which, if either is believed by the jury to be true, can result in an acquittal. In fact, it is common in cases of sexual assault for defendants to attack the issue of identity, and, at the same time, put forth to the jury, either through direct evidence or through the elicitation of evidence on cross-examination that, if the alleged act took place, it was with consent.

The defendant runs the risk that the jury, in deliberations, will seize upon this same inconsistency and use it to weaken either theory of not guilty. However, this is a risk a defendant is entitled to take. For the prosecutor, as here, to tell the jury that a defendant cannot have alternative theories or inconsistent defenses was improper and objectionable per se.

As stated above, correct instructions on the burden of proof were finally given to the jury, and thus, although I find error, I do not find reversible error, taking the record as a whole.

The majority notes that defense counsel failed to object when the offending statements were made, but then comes to the improper conclusion that, therefore, the statement must have been "neither obvious nor important." Whenever a prosecutor makes an incorrect statement to the jury, and impinges on a defendant's right not to take the stand and his right not to have to explain away the evidence the state produces, this raises constitutional issues, including the fifth amendment right not to take the stand and possibly incriminate oneself,[2] the sixth amendment right to a fair trial,[3] and is important.

Such issues of constitutional magnitude are reviewable, although not raised at trial. *See State v. Malaski,* 330 N.W.2d 447, 451 (Minn.1983) (although defense counsel did

---

**2.** U.S.Const. Amend. V:

No person * * * shall be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty, or property, without due process of law * * *.

**3.** U.S.Const. Amend. VI.:

In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district

wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his defence.

not object, and failed to "preserve" claim of error for appeal, error could be considered on appeal where error was "plain error affecting substantial rights").