*This opinion is nonprecedential except as provided by Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A23-0648**

State of Minnesota,
Respondent,

vs.

William Wayne Weber,
Appellant.

**Filed April 1, 2024
Affirmed in part, reversed in part, and remanded
Schmidt, Judge**

Ramsey County District Court
File No. 62-CR-19-3017

Keith Ellison, Attorney General, St. Paul, Minnesota; and

John Choi, Ramsey County Attorney, Alexandra Meyer, Assistant County Attorney, St. Paul, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Chang Y. Lau, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Wheelock, Presiding Judge; Schmidt, Judge; and Kirk, Judge.[*]

---

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

**SCHMIDT**, Judge

Appellant William Wayne Weber argues that his convictions of first-, second-, and fifth-degree criminal sexual conduct must be reversed and vacated for insufficient evidence because the testimony of the victim, N.B., was inconsistent and lacked corroboration. Weber also argues that the district court erred in entering convictions for the lesser-included offenses of second- and fifth-degree criminal sexual conduct. Because the evidence presented at trial was sufficient to sustain the convictions, we affirm Weber's conviction of first-degree criminal sexual conduct. But because the district court erred by entering convictions of second- and fifth-degree criminal sexual conduct, we reverse and remand for the limited purpose of vacating those convictions.

**FACTS**

N.B.'s mother (mother) and Weber had a brief relationship while N.B. was a young child. Mother and Weber share one child, B.B., as a result of that relationship. Eventually, Weber sought, and was granted, physical custody of B.B. When N.B. was five or six years old, she began visiting Weber's home regularly to spend time with B.B. The frequency of N.B.'s visits varied, but she was usually at Weber's home every other weekend until she stopped visiting completely in late 2015 or early 2016.

N.B. disclosed to mother in February 2017 that Weber had abused her but did not tell her details, just that she felt unsafe and that she did not want to see Weber because he had hurt her. N.B. told mother that she had told her cousin about the abuse. Mother then called her sister, the mother of the cousin N.B. referenced, who told mother that "sexual

stuff" had happened. N.B. also disclosed the abuse to a therapist at her school but could not recall specifically what she told the therapist.

Mother reported the abuse to police in February 2017, and to Isanti County Child Protection in July 2017. N.B. was interviewed but made no substantive disclosures.

In August 2017, a nurse interviewed N.B. at the Midwest Children's Resource Center (MCRC), and N.B. provided some details but did not specifically disclose the abuse, only saying there was "something" involving Weber. N.B. expressed concern that mother would be mad if N.B. failed to disclose the abuse because, at the time of the interview, mother wanted to have B.B. live with her. However, N.B. and mother both testified that mother had not told N.B. to disclose the abuse so mother could get custody of B.B., pressured N.B. to say she was abused, or coached N.B. on what to say. The investigation was closed pending further evidence because N.B. did not disclose any abuse.

In November 2017, N.B. told a social worker at her school that Weber first abused her when she was in third grade. N.B. was not brought back to the MCRC for a subsequent interview after this disclosure and the investigation was not reopened as a result. An investigating officer also received a report around this time that indicated N.B. was "notorious for making up stories."

N.B. disclosed more details of the abuse to a therapist in December 2018. She reported that Weber had forced her to put his penis in her mouth and had raped her. The therapist testified that N.B. stated the abuse occurred every other weekend from age seven to sometime in late 2017 when N.B. was ten years old. N.B. expressed a concern about having contracted herpes from Weber because she described getting mouth sores.

An investigating officer was notified that N.B. had made disclosures to the therapist. Mother brought N.B. to the MCRC for an interview. N.B. told the interviewing nurse that Weber began abusing her at the age of six or seven and that she told mother what happened when she was nine years old. N.B. reported being abused more than 17 times and that every time Weber told her not to tell anyone. N.B. recalled Weber forcing her to take her clothes off, Weber forcing her to touch his penis with her mouth, Weber's hands touching her butt, and Weber's penis touching the crease of her butt. N.B. disclosed that Weber would ejaculate on her back and clean it off with a towel. N.B. also disclosed that Weber forced her to put his penis in her mouth while he watched pornography on a computer, forced her to touch his penis, and forced her to drink semen out of a glass. N.B. denied that there was vaginal or anal penetration. N.B. asked the nurse if her statements in the interview would allow B.B. to live with mother and N.B.; the nurse said, "no."

After N.B.'s disclosures, the investigator contacted Weber in January 2019. Weber told the investigator during an interview that N.B. would visit his home every weekend in 2014 and every other weekend until late 2015 or early 2016. These visits would be from Friday to Saturday or Sunday depending on the weekend. Weber told the investigator that N.B. stopped visiting his home because she told mother that she "didn't want to come over anymore." Weber denied doing anything inappropriate.

Respondent State of Minnesota charged Weber with one count of first-degree criminal sexual conduct for offenses occurring between June 2013 and July 2017. The state amended the complaint to include counts of second- and fifth-degree criminal sexual conduct during the same time period.

At trial, N.B. testified that Weber began sexually assaulting her a few months after she started going to his home and that he assaulted her multiple times. N.B. described that Weber forced her to kneel under a computer desk and put his penis in her mouth while he watched pornography. She testified that Weber ejaculated in her mouth. N.B. testified that Weber touched the outside of her butt with his penis, put his penis inside her vagina, and that Weber told her not to tell anyone or he would hurt her. N.B. said she previously denied penetration had occurred "to avoid opening up."

Weber testified in his defense. He denied sexually assaulting N.B.

The jury found Weber guilty on all three counts. Weber filed a post-verdict motion for a new trial, arguing that the verdict was not justified by the evidence and the prosecutor committed misconduct. The district court denied Weber's motion.

At sentencing, the district court accepted the jury's verdicts on all three counts. The court sentenced Weber to 144 months for the first-degree criminal sexual conduct conviction and imposed no sentences on the other counts because they were part of the same behavioral incident. The warrant of commitment lists convictions on all three counts.

This appeal follows.

**DECISION**

I.    **The evidence supports the first-degree criminal sexual conduct conviction.**

Weber argues that the state failed to provide sufficient evidence because the only direct evidence provided at trial included N.B.'s testimony and prior disclosures. Weber asserts that, "[b]ecause the state's case hinged exclusively on N.B.'s accusations," this court should reverse and vacate his convictions. Weber's arguments are unpersuasive.

"When evaluating the sufficiency of the evidence, appellate courts carefully examine the record to determine whether the facts and the legitimate inferences drawn from them would permit the jury to reasonably conclude that the defendant was guilty beyond a reasonable doubt of the offense of which he was convicted." *State v. Griffin*, 887 N.W.2d 257, 263 (Minn. 2016) (quotations omitted). "The evidence must be viewed in the light most favorable to the verdict, and it must be assumed that the fact-finder disbelieved any evidence that conflicted with the verdict." *Id.* "The verdict will not be overturned if the fact-finder, upon application of the presumption of innocence and the State's burden of proving an offense beyond a reasonable doubt, could reasonably have found the defendant guilty of the charged offense." *Id.*

"A person who engages in sexual penetration with another person, or in sexual contact with a person under 13 years of age . . . is guilty of criminal sexual conduct in the first degree" if the actor has a significant relationship to the victim, the victim was under 16 years old at the time, and "the sexual abuse involved multiple acts committed over an extended period of time." Minn. Stat. § 609.342, subd. 1(h)(iii) (2012). Sexual contact includes "intentional touching by the actor of the [victim's] intimate parts," touching by the victim of the actor's intimate parts "by inducement if the [victim] is under 13 years of age," as well as "the intentional touching with seminal fluid or sperm by the actor" of the victim's body or the clothing covering the victim's body. Minn. Stat. § 609.341, subd. 11(a)(i)-(ii), (v) (2012). Intimate parts include "the primary genital area, groin, inner thigh, buttocks, or breast[.]" Minn. Stat. § 609.341, subd. 5 (2012).

Viewing the evidence in the light most favorable to the verdict, and assuming the jury believed the state's evidence and disbelieved any contrary evidence, the evidence sufficiently proved Weber committed first-degree criminal sexual conduct against N.B.

First, N.B.'s testimony satisfied the "significant relationship" statutory element. N.B. testified that she went to Weber's home regularly, beginning when she was five or six years old, to spend time with B.B. The statute defines a "significant relationship," in part, as a situation where the actor is "an adult who jointly resides intermittently or regularly in the same dwelling as the [victim]." Minn. Stat. § 609.341, subd. 15(3) (2012). N.B.'s regular overnight stays at Weber's home meet that definition.

N.B. also testified that the sexual abuse started a few months after she started going to Weber's home and did not stop until she was about 10 or 11. This testimony sufficiently establishes the age and duration elements of the offense as N.B. was under the age of 13 for the duration of the extended period during which the offenses occurred. *See* Minn. Stat. § 609.342, subd. 1(h)(iii).

N.B. further testified that Weber forced her to kneel under a computer desk and put his penis in her mouth while he watched pornography, Weber touched her with his hands, Weber touched the outside of her butt with his penis, his penis had gone inside her vagina, and he would have her touch his penis with lube. This testimony is sufficient to permit the jury to conclude beyond a reasonable doubt that Weber had sexual contact with N.B.

Accordingly, N.B.'s testimony, when viewed in the light most favorable to the verdict, constitutes sufficient evidence that supports Weber's first-degree criminal sexual conduct conviction.

### A.    Credibility of N.B.

Weber nevertheless asserts that this court should reverse his convictions because N.B.'s testimony and prior disclosures were inconsistent and controverted by other evidence. "[R]esolving conflicting testimony is the exclusive function of the jury because it has the opportunity to observe witnesses' demeanor and to weigh their credibility." *State v. Beard*, 380 N.W.2d 537, 541 (Minn. App. 1986). On review, appellate courts "assume that the jury believed the State's witnesses and disbelieved any contradictory testimony." *Id.* "Inconsistent testimony is more a sign of human fallibility in perception than testimonial falsity, especially in cases involving a traumatic or stressful event." *State v. Jackson*, 741 N.W.2d 146, 153 (Minn. App. 2007). A jury is permitted to believe some parts of a witness's testimony and not believe other parts. *State v. Landa*, 642 N.W.2d 720, 726 (Minn. 2002). Corroboration is not required in criminal sexual conduct cases. *State v. Johnson*, 679 N.W.2d 378, 387 (Minn. App. 2004).

The jury heard testimony and evidence, including information regarding the asserted inconsistencies, and found N.B. credible. *See State v. Blair*, 402 N.W.2d 154, 158 (Minn. App. 1987) (holding that, despite inconsistencies in child's testimony, such testimony standing alone supported the jury's verdict). Minor inconsistencies are not grounds for reversal, especially in cases involving a traumatic or stressful event. *Jackson*, 741 N.W.2d at 153. Although there were some inconsistencies in N.B.'s disclosures and trial testimony, our review of the record shows that, as a whole, her testimony was consistent that Weber sexually assaulted her. *State v. Stufflebean*, 329 N.W.2d 314, 319 (Minn. 1983) (holding that, while there were inconsistencies in the sexual assault victim's testimony, the victim's

8

testimony was consistent as a whole considering the trauma and stress of the incident). As such we defer to the jury's credibility determination. *Beard*, 380 N.W.2d at 541; *see also State v. Reichenberger*, 182 N.W.2d 692, 694-95 (Minn. 1970) (affirming a conviction of sexual intercourse with a minor even though the minor made conflicting statements prior to trial, because the minor testified positively at trial that intercourse had occurred).

**B.     The inconsistencies are not "particularly troublesome."**

Weber further argues this court should reverse because the inconsistencies in N.B.'s testimony and disclosures are "particularly troublesome." Weber contends evidence existed that (1) N.B. fabricated her allegations so Weber would lose custody of B.B.; (2) Weber established an alternative source of N.B.'s knowledge of sexual matters; and (3) N.B. had a propensity for "making up stories." However, the cases cited by Weber in support of this argument are unique to their facts and readily distinguished.

In *State v. Huss*, the supreme court reversed a conviction based on "unusual facts." 506 N.W.2d 290, 292-93 (Minn. 1993). There, the only evidence of sexual abuse was provided by a very young child whose testimony was contradictory on key issues. *Id.* An expert also testified that the child's allegations may have been influenced by repeated exposure to highly suggestive material about sexual abuse. *Id.*

In *State v. Langteau*, the supreme court reversed a conviction for aggravated robbery. 268 N.W.2d 76, 77 (Minn. 1978). The supreme court noted that the actions of the victim and defendant were questionable or unexplained and that the jury reached a speedy determination. *Id.* The court concluded that, based upon the unique circumstances of the case, the interests of justice required a new trial. *Id.*

9

Finally, in *State v. Gluff*, the supreme court reversed a conviction and remanded for a new trial. 172 N.W.2d 63, 65 (1969). The court reversed after holding that the identification of the defendant was based on a tainted lineup, the witness only observed the defendant for a short time, and the witness's initial description to law enforcement did not match the defendant. *Id.*

The unique circumstances in *Huss*, *Langteau*, and *Gluff* that required reversal are not present in this case. N.B., while a younger child when the abuse occurred, was 14 when she testified at trial. Although some of the details N.B. provided about the abuse changed, N.B. consistently described the abuse in her disclosures and testimony, and always identified Weber as her abuser. Despite N.B. expressing concerns about the custody of B.B. during certain disclosures, N.B. and mother repeatedly denied that custody concerns for B.B. played any role in N.B.'s disclosures, or that mother pressured or coached N.B. N.B. also disclosed the abuse despite being told that her disclosures would not result in B.B. living with her and mother. By finding Weber guilty, the jury necessarily found N.B.'s testimony credible. We must defer to the jury's weighing of the credibility of witnesses. *See State v. Garden*, 404 N.W.2d 912, 916 (Minn. App. 1987) (concluding that, while defendant argued the allegations against him were fabricated because he and his wife were engaged in divorce proceedings with contested custody, the argument was unpersuasive considering the established precedent that witness credibility is for the jury, not a reviewing court). N.B.'s testimony, in the light most favorable to the verdict, sufficiently proved Weber's guilt beyond a reasonable doubt.

10

**II.    The warrant of commitment erroneously included convictions for second- and fifth-degree criminal sexual conduct.**

Weber argues the warrant of commitment improperly adjudicated the second- and fifth-degree criminal sexual conduct convictions, contending those convictions are for included offenses of Weber's first-degree conviction. The state agrees.

Whether an offense is an included offense of the charged offense is a legal question that appellate courts review de novo. *State v. Cox*, 820 N.W.2d 540, 552 (Minn. 2012). An individual "may be convicted of either the crime charged or an included offense, but not both." Minn. Stat. § 609.04, subd. 1 (2012). An included offense is, among other things, "a lesser degree of the same crime." Minn. Stat. § 609.04, subd. 1(1). Section 609.04 prohibits convictions for "two counts of criminal sexual conduct (different sections of the statute or different subsections) on the basis of the same act or unitary course of conduct." *State v. Folley*, 438 N.W.2d 372, 373 (Minn. 1989).

The charges of second- and fifth-degree criminal sexual conduct are lesser degrees of first-degree criminal sexual conduct, and the charges were all based on evidence that Weber engaged in acts of sexual contact with N.B. within the same timeframe. Because all three convictions were based on the same acts, the convictions for second- and fifth-degree criminal sexual conduct must be vacated. *Folley*, 438 N.W.2d at 373.

We affirm the first-degree criminal sexual conduct conviction, reverse the second- and fifth-degree criminal sexual conduct convictions, and remand to vacate the second- and fifth-degree convictions and to correct the warrant of commitment.

**Affirmed in part, reversed in part, and remanded.**