STATE of Minnesota, Respondent,

v.

Dlaine Ernest PIESCHKE, Appellant.

No. 49810.

Supreme Court of Minnesota.

July 3, 1980.

Rehearing Denied Sept. 10, 1980.

Genty & Eggert and Francis J. Eggert, Winsted, for appellant.

Warren Spannaus, Atty. Gen., Thomas L. Fabel, Deputy Atty. Gen., Gary Hansen, Sp. Asst. Atty. Gen., St. Paul, Peter J. Kasal, County Atty., Glencoe, for respondent.

Heard before KELLY, YETKA, and WAHL, JJ., and considered and decided by the court en banc.

PETERSON, Justice.

Defendant, Dlaine Ernest Pieschke, was charged with aggravated driving while under the influence of alcohol (Minn.Stat. § 171.245 (1976) ),[1] driving while under the influence (Minn.Stat. § 169.121(1)(a) (1978) ), driving after revocation of his license (§ 171.24), and leaving the scene of an accident (§ 169.09, subd. 4). The case was tried to a jury, and defendant was convicted of all charges but was sentenced only on the conviction of aggravated driving while under the influence, for which he received a sentence of 1 year. Defendant appeals from the convictions. We affirm in part and reverse in part.

The charges against defendant arose out of an automobile accident in Glencoe, Minnesota, in the early morning of April 1, 1978. An automobile owned by Howard McCormick rounded a corner and struck an unattended blue pickup truck parked on the street. The automobile did not stop immediately but proceeded around the corner and stopped approximately one block away. In the automobile were McCormick, Mavis Bergs, Mark Ranzau, and defendant, all of whom had spent the evening drinking heavily at a bar in Plato, Minnesota. Defendant admitted at trial that he had consumed about 10 drinks consisting of whiskey and water and was intoxicated at the time of the accident. The officers who arrested defendant at the scene of the accident also testified he was staggering, abusive, and clearly intoxicated. It is undisputed that defendant's license had been revoked prior to the morning of the accident for driving while under the influence. The only factual dispute was the identity of the person driving the automobile.

Glencoe police officers David Revier and William Newman were on duty when they heard sounds of the collision. They came upon the damaged pickup and then found the McCormick automobile nearby. As the officers approached, they saw McCormick and defendant outside the automobile examining the damage. The two then got into the automobile, McCormick in the driver's seat and defendant in the passenger's seat. The other two passengers had remained in the automobile—Bergs in the middle of the front seat, Ranzau in the back.

At the scene, the officers took statements from Bergs and McCormick. Both stated defendant had been driving when the collision occurred. Their statements were reduced to writing and signed at the police station less than an hour after the accident. Defendant, on the other hand, denied to the officers that there had been a collision, and Ranzau told the officers he had passed out in the back seat and did not know who was driving.

---

1. Minn.Stat. § 171.245 (1976) provided that "[a]ny person who operates a motor vehicle * * * in violation of section 169.121 [driving while under the influence] while the driver's license or driver's privilege is cancelled, suspended or revoked (1) * * * while the person was under the influence of alcohol * * * is guilty of a gross misdemeanor." That section has since been replaced by § 169.129, which became effective September 1, 1978, and is virtually identical.

At trial, the prosecution called Officer Revier and brought out as substantive evidence over defense objection the oral and written statements of Bergs and McCormick. Called to testify for defendant, however, Bergs and McCormick changed their stories. Bergs testified she had actually fallen asleep in the front seat of the automobile before the others entered and that she slept the entire time the automobile was in motion, including the time of the accident. She claimed she had no way of knowing who was driving when the accident occurred. Bergs explained the inconsistent statement she made to the police by saying that she had heard defendant and McCormick outside the bar discussing who would drive McCormick's automobile but that she had fallen asleep before the discussion was resolved and simply assumed defendant had convinced McCormick to let him drive.

McCormick testified at trial that he was driving at the time of the accident but had earlier implicated defendant because he, McCormick, had a previous conviction that was less than 1 year old for driving while under the influence.

Ranzau, who had told the officers he was unconscious and did not know who was driving, testified at trial that he was in fact awake and that McCormick was the driver. Defendant also testified on his own behalf that McCormick was the driver.

1. Defendant contends, first, that the prior statements Bergs and McCormick made to the police were hearsay admissible for impeachment purposes only and should not have been admitted as substantive evidence that defendant was driving the automobile. The state contends the statements were not hearsay because they fell within Minn.R.Evid. 801(d)(1)(D), which excludes from hearsay statements "describing or explaining an event or condition made while

the declarant was perceiving the event or condition or immediately thereafter," if the declarant testifies at trial and is available for cross-examination. The state contends these statements were made to police officers within minutes of the accident, and the declarants had no opportunity to manufacture a false account. The state also points out that Bergs and McCormick testified at trial that they did not speak with each other between the time of the accident and the time of their statements to the police, yet the accounts they gave the officers were consistent with each other. The state argues this is further indication of the veracity of the statements.

Defendant responds that the statements could not be admitted under Rule 801(d)(1)(D) because they were not "excited utterances" and because the statements, particularly the written statements, were not made while Bergs and McCormick were "perceiving the event or condition or immediately thereafter."

■ It is clear that a prior statement need not be an "excited utterance" to be excluded from hearsay under Rule 801(d)(1)(D). The traditional exception for "excited utterances" is provided in Rule 803(2). Rule 801(d)(1)(D) requires instead a statement of a "present sense impression" or "unexcited utterance" made contemporaneously with the event or immediately thereafter so that there is little time to consciously fabricate a story. 11 Minnesota Practice, Evidence § 801.07 (1979).[2]

■ The question whether the statements were made immediately after the time of the accident poses more problems but in this case must be resolved against defendant. Defendant's attorney objected to the introduction of the statements on hearsay grounds,[3] but when the prosecutor

2. The advisory committee comment to Rule 801(d)(1)(D) indicates that the statements must be made "at or near the time" of the event so as to be relatively spontaneous. It notes that the traditional concerns about hearsay are alleviated by the availability of the declarant for cross-examination at trial.

3. Defense counsel's objection at trial was based entirely on Rule 801(d)(1)(A), which excludes from hearsay prior statements which were given under oath at a trial, hearing, or deposition. The state readily admitted that the Bergs and McCormick statements were not made under

responded that the statements were excluded from hearsay under Rule 801(d)(1)(D), defendant's attorney made no further objection.

It appears from the record that the police officers were close enough to the scene to have heard the collision. They responded immediately and found the automobile in which defendant and his companions were riding less than one block away. Thus, the oral statements by Bergs and McCormick were probably made within a few minutes of the accident and, by their own admission, were made before they had had an opportunity to discuss the events. While this testimony does not establish indisputably that the oral statements made to the police by Bergs and McCormick should fall under Rule 801(d)(1)(D), defense counsel's failure to object to any lack of foundation for applying that exclusion and his failure to make a record to demonstrate why the exclusion should not apply denied the trial court the opportunity to evaluate his objection and denied the state the opportunity to provide additional foundation for admitting the testimony if the court had deemed it necessary.[4] We have held that the trial court has broad discretion in determining the admissibility of such evidence. *Hase v. American Guarantee & Liability Ins. Co.*, 312 Minn. 271, 274–75, 251 N.W.2d 638, 641 (1977); *State v. Gorman*, 229 Minn. 524, 527, 40 N.W.2d 347, 349 (1949). We believe that the trial court did not abuse its discretion in determining on the basis of this record that the prior oral statements of Bergs and McCormick were not hearsay and were therefore admissible as substantive evidence under Rule 801(d)(1)(D).

■ 2. Defendant does have a persuasive argument that the written statements were clearly taken too long after the accident to come within Rule 801(d)(1)(D). However, the written statements merely repeated the oral statements to which Officer Revier testified, so we hold there was no prejudice to defendant from their admission.

3. Defendant contends next that there was insufficient evidence to sustain his conviction. He argues that since the only witnesses who could testify that defendant was the driver recanted their stories at trial, the jury could not find beyond a reasonable doubt that defendant was the driver.

■ We have often held that on review of a criminal conviction we will construe the record most favorably to the state and will assume the evidence supporting the conviction was believed and the contrary evidence disbelieved. *State v. Strimling*, 265 N.W.2d 423, 428–29 (Minn.1978); *State v. Olsen*, 258 N.W.2d 898, 901 (Minn.1977); *State v. Norgaard*, 272 Minn. 48, 52, 136 N.W.2d 628, 631–32 (1965). This is especially true where resolution of the case depends on conflicting testimony, because weighing the credibility of witnesses is the exclusive function of the jury. *State v. Poganski*, 257 N.W.2d 578, 581 (Minn.1977). In *Poganski*, we concluded that the jury could choose to believe the testimony of two witnesses against the defendant even though the testimony was inconsistent and contradictory and even though the witnesses had been involved in numerous fraudulent schemes and had been accorded favorable treatment by the prosecutor in return for their testimony. Even inconsistencies in the state's case will not require a reversal of the jury verdict. *State v. Bond*, 285 Minn. 291, 173 N.W.2d 347 (1969). In *State v. Reichenberger*, 289 Minn. 75, 182 N.W.2d 692 (1970), the 13-year-old prosecutrix in a carnal knowledge case changed her story about defendant's conduct a number of times, but we held her testimony at trial was sufficient to justify the conviction.

■ In the case at bar, the jury had facts from which it could reasonably choose between the conflicting stories of Bergs and McCormick. On cross-examination the prosecutor brought out several incredible aspects of Bergs' story that she was asleep

---

oath and therefore were not admissible under the exclusion of Rule 801(d)(1)(A).

4. We also note that defense counsel made no attempt to obtain a jury instruction limiting the use of the statements to impeachment.

and did not know who was driving. The jury could have found it difficult to believe she slept so soundly while sitting up that she did not see the driver enter the automobile and did not awaken when the automobile collided with the pickup but awoke only after the automobile had stopped and the driver had gotten out.[5] Furthermore, despite her claim that she slept through the collision and did not speak to anyone before talking to the police, her statement to the police correctly described the way in which the accident occurred, and she knew the automobile had hit a blue pickup. Finally, she claimed on the stand that although she had seen defendant and McCormick since the accident and in fact rode with them to the trial, she never once asked them who was driving that morning.

McCormick's testimony was not so incredible as Bergs', but it was still for the jury to resolve the question of his credibility. Accordingly, we hold the jury was entitled to believe Bergs' and McCormick's prior statements, which were properly admitted as substantive evidence, and the jury's determination of guilt should be upheld.

■ 4. Defendant next contends that the trial court should have declared a mistrial when it was discovered that a six-pack of beer, which had been seized at the time of the arrest but never reviewed at a *Rasmussen* hearing, was sitting in the courtroom in full sight of the jurors. Defendant also complains of a reference in the testimony of Officer Revier to a beer can he saw on the floor of the automobile; the beer can also had not been reviewed at a *Rasmussen* hearing.

Defendant's claim of prejudice as a result of these incidents must be rejected. The only issue in the case was whether defendant was driving. He admitted he was intoxicated, and the evidence of his behavior in that respect was undisputed. He was not being tried for a violation of the "open bottle" law, § 169.122. Therefore, the presence of the six-pack and the reference to the beer can could not possibly have preju-

diced him, and it is clear the incidents were unintentional on the part of the prosecution. *See LaMere v. State,* 278 N.W.2d 552, 554–55 (Minn.1979).

■ 5. Finally, defendant contends the trial court erred in refusing to instruct the jury that if it convicted defendant of aggravated driving while under the influence it could not also convict him of the lesser charges of driving while under the influence and driving after revocation. We agree with defendant that he should not have been convicted on all three charges. Section 609.04, subd. 1, provides:

> Upon prosecution for a crime, the actor may be convicted of either the crime charged or an included offense, but not both. An included offense may be any of the following:
>
> *    *    *    *    *    *
>
> (4) A crime necessarily proved if the crime charged were proved.

Defendant contends that driving while under the influence and driving after revocation are lesser included offenses of aggravated driving while under the influence under § 609.04, subd. 1(4), because a conviction of the latter offense necessarily requires proof of the former two offenses. While this question is one of first impression before this court, it is clear that defendant is correct. However, defendant was not prejudiced by the court's failure to instruct the jury that if it convicted on the greater offense it could not also convict on the lesser offenses. The only issue was whether defendant had been driving. Once the jury decided defendant had been driving, it was undisputed that he was driving while under the influence and that his license had been revoked on the basis of a prior conviction for the same offense. Furthermore, the jury convicted defendant on all three counts. Thus, the only effect of defendant's requested instruction would have been to limit the conviction to aggravated driving while under the influence. Since that result can be accomplished simply by re-

---

5. The police officers testified Bergs did not appear or act intoxicated at the scene. Thus, the jury could have concluded she had not "passed out" in the automobile.

versing the convictions on the lesser included offenses, leaving intact the convictions for aggravated driving while under the influence and leaving the scene of the accident, a new trial is not necessary. Furthermore, because defendant was only sentenced for aggravated driving while under the influence, resentencing will not be necessary.

Affirmed in part; reversed in part.