**STATE of Minnesota, Respondent,**

**v.**

**William G. ERICKSON, Appellant.**

**No. C4–89–1227.**

Court of Appeals of Minnesota.

May 1, 1990.

Review Denied May 23, 1990.

## OPINION

WOZNIAK, Chief Judge.

Appellant William G. Erickson was convicted of criminal sexual conduct in violation of Minn.Stat. § 609.342, subd. 1(a) (1988) in connection with the sexual abuse of his girlfriend's then eight-year-old daughter, H.H. On appeal, Erickson claims that the trial court's refusal to admit expert testimony on a psychological theory which recognizes a distinction between "learned memory" and memory of actual events and on a Czechoslovakian study of unwanted children violated his right to present a defense. Erickson also claims that the evidence is insufficient to sustain his conviction. We disagree and affirm his conviction.

## FACTS

In April 1988, Erickson was living with his girlfriend, D.H., her daughter, H.H., and her five-year-old son. D.H. told a friend that she suspected Erickson of sexually abusing H.H. and asked her to talk to H.H.

When told about their conversation, D.H. called the police. H.H. told Officer Karyl Huemoeller that Erickson had touched her one week earlier while everyone else was gone. H.H. also told him that Erickson had touched her four or five times beginning after Christmas 1987. D.H. clarified that the last time Erickson watched H.H. while D.H. was gone was on April 8, 1988.

H.H. next talked to Sergeant Carole Irvine, an investigator with the Minneapolis Police Department's Child Abuse Unit. The interview was videotaped and portions were admitted into evidence. Irvine used anatomically correct dolls during the interview. H.H. described three separate incidents. She didn't know precisely when the incidents occurred, but described them as beginning in January 1988 and ending on April 13 when Erickson was arrested on an unrelated matter. H.H. stated that he had touched her with his fingers on her anal,

Hubert H. Humphrey, III, Atty. Gen., Thomas L. Johnson, Hennepin County Atty. and Lisa A. Berg, Asst. County Atty., Minneapolis, for respondent.

John M. Stuart, State Public Defender and Susan L.P. Hauge, Asst. Public Defender, Minneapolis, for appellant.

William G. Erickson, Stillwater, appellant pro se.

Considered and decided by WOZNIAK, C.J., and PARKER and SCHULTZ,* JJ.

* Acting as judge of the Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 2.

vaginal, and breast areas. She first said that the touching occurred over her clothing and, when questioned further, said it had happened under her clothing. She also said that he had not penetrated her anus, but had slightly penetrated her vagina. She described the assaults as occurring in the living room.

Irvine interviewed H.H. again on June 2 at her school. She stated that Erickson had first touched her vaginal and anal areas with his hand while they were on the couch in the living room. She described a second incident as occurring in her bedroom and involving partial vaginal penetration with Erickson's hand and penis. She described a third incident on the living room couch when Erickson slightly penetrated her vagina with his penis.

H.H. was examined by Dr. Linda Thompson, a pediatrician at Hennepin County Medical Center. She indicated where Erickson had touched her by placing her finger between her labia minora. Dr. Thompson found a small linear scar on her posterior fourchette, the area where the labia minora join at the base of the vaginal area. Dr. Thompson testified that such a scar is consistent with either penetration or a straddle type injury. D.H. testified that, to her knowledge, H.H. had never sustained such an injury. Dr. Thompson also testified that H.H.'s normal vaginal opening and intact hymen is not inconsistent with the type of sexual abuse alleged.

Erickson's defense was that D.H. had coerced H.H. into saying that Erickson had sexually abused her because of her animosity toward him for leaving her. According to Erickson, D.H. had promised to buy H.H. a new dress and to "fix up" her hair in exchange for her allegations against him.

One of the defense witnesses was Dr. Ralph Underwager, a licensed psychologist with experience treating sexual abuse offenders and victims. Dr. Underwager was permitted to testify regarding interview techniques and how interviewer bias influences children's responses. He then critiqued the videotaped interview and related instances when improper interviewing had occurred.

Dr. Underwager was also permitted to testify regarding the use of anatomically correct dolls. He testified that the dolls should not be used in interviewing children of a particular age. He also testified that the dolls suggest answers to interviewer questions and that the genitals and orifices of the dolls themselves suggest positioning the dolls in a manner mimicking sexual behavior. He also critiqued the use of the dolls on the videotape and noted that H.H. had not alleged that Erickson had penetrated her with his penis until after she was shown the dolls.

Dr. Underwager was not allowed to testify regarding a' Czechoslovakian study of unwanted children or a psychological theory of "learned memory."

The jury found Erickson guilty of two counts of first degree and two counts of second degree criminal sexual conduct. This appeal followed.

## ISSUES

1. Did the trial court err by excluding expert testimony regarding learned memory and the suggestibility of unwanted children?

2. Is the evidence sufficient to sustain Erickson's conviction?

## ANALYSIS

■ 1. Erickson contends that the trial court violated his constitutional right to present a defense by excluding Dr. Underwager's testimony. The due process right to present a defense is "the right to present the defendant's version of the facts as well as the prosecution's to the jury so it may decide where the truth lies." *Washington v. Texas,* 388 U.S. 14, 19, 87 S.Ct. 1920, 1923, 18 L.Ed.2d 1019 (1967). *Accord State v. Brechon,* 352 N.W.2d 745, 751 (Minn.1984).

Erickson was able to explain his version of events to the jury without the excluded testimony. His grandmother, Viola Himlie, testified that D.H. had said Erickson was not coming back to her, she would not help

him and didn't want Himlie to help him, and she would see to it that Erickson was in prison for life. When Himlie asked how D.H. would do that, D.H. told her she would buy H.H. new clothes and fix her hair and H.H. would say whatever she told her to say. When Himlie told D.H. she did not believe she would use H.H. to get even with Erickson, D.H. said she did not care.

■ D.H. denied saying any of the above, but admitted that she hated Erickson. In addition, H.H. testified that her mom had helped her remember what to say at trial and then stated that her mom had only told her to tell the truth. Together with Dr. Underwager's admitted testimony, the defense theory that H.H. was coerced into telling a "suggested" story of sexual abuse was presented to the jury. Exclusion of the evidence did not violate Erickson's constitutional rights.

■ Both parties have also addressed the issue of whether it was prejudicial error to exclude the expert testimony. The admissibility of such testimony lies within the sound discretion of the trial court. *State v. Helterbridle*, 301 N.W.2d 545, 547 (Minn.1980). Under Minn.R.Evid. 702, the basic consideration used to determine whether expert testimony should be admitted is whether the testimony will be helpful to the jury. *Id.* The helpfulness requirement is not met

> if the subject of the testimony is within the knowledge and experience of a lay jury *and* the testimony of the expert will not add precision or depth to the jury's ability to reach conclusions.

*Id.* (emphasis added).

■ Even when the helpfulness requirement is met, the trial court may exclude the testimony based on Minn.R.Evid. 403. *Id.* The probative value of the testimony should be weighed against the danger of unfair prejudice, confusion, or misleading the jury. *State v. Hall*, 406 N.W.2d 503, 505 (Minn.1987). If the probative value of the testimony is substantially outweighed by any of these considerations, the testimony may be excluded. *Id.*

### CZECHOSLOVAKIAN STUDY

■ The trial court excluded Dr. Underwager's proffered testimony concerning a Czechoslovakian study which tracked children who were unwanted by their mothers. Dr. Underwager would have testified that unwanted children are more dependent on and submissive toward their mothers, and thus vulnerable to suggestion by the mother. He would have testified that there was a direct causal link between H.H.'s mistreatment in her early life and her vulnerability to "malicious suggestion" by D.H.

Three witnesses were willing to testify to statements made by D.H. in H.H.'s presence. Those statements were that H.H. was the product of an incestuous relationship between D.H. and a first cousin which D.H. described as rape, that H.H. was unloved, and that D.H. wished H.H. had never been born.

The trial court excluded Dr. Underwager's testimony because of: (1) insufficient foundation establishing that H.H. belongs in the category of "unwanted"; (2) the limited relevance of the Czechoslovakian study to children in America; and (3) the limited materiality of whether H.H. is more likely to lie to please her mom than other children to the issue of whether H.H. is lying about the sexual abuse incidents. The trial court also determined that whatever probative value the study may have had was far outweighed by the direction it would take during the trial.

We agree with the trial court's assessment of the proferred testimony; it was not an abuse of discretion to exclude testimony concerning the Czechoslovakian study.

### LEARNED VERSUS ACTUAL MEMORY

■ The trial court also excluded testimony on the psychological theory of learned versus actual memory and how to detect which is in use. Dr. Underwager would have described three indicators which permit psychologists to determine whether events are being related from learned or actual memory. The indicators are characteristics of the speech used to

relate the events: a child speaking from learned memory uses more new words, ambiguous language, and less sensory perceptual detail than when speaking from memory of actual events. Dr. Underwager also would have testified that, in his opinion, H.H. related the sexual abuse incidents from learned instead of actual memory.

The trial court stated that allowing the testimony would be too close to having an expert tell the jury that H.H. was not telling the truth. The trial court also balanced the probativeness of the testimony against the danger of confusing the jury by litigating whether she really did use new words and little detail.

■ In a line of cases including *State v. Saldana*, 324 N.W.2d 227, 231 (Minn.1982), Minnesota has balanced the need for expert evidence against interference with the exclusive function of the jury to determine witness credibility. As a general rule, expert testimony regarding the truth or falsity of a witness' allegations is not admissible. *State v. Myers*, 359 N.W.2d 604, 611 (Minn.1984). Both parties rely on *Myers* as authority to either admit or exclude the testimony.

In *Myers*, admission of testimony regarding the characteristics found in sexually abused children and those observed in the complainant was not erroneous. *Id.* at 609. The court stated that an *indirect* effect of that portion of the testimony was to bolster the complainant's testimony. The court recognized that:

> Much expert testimony tends to show that another witness either is or is not telling the truth. That fact, by itself, does not render the testimony inadmissible.

*Id.* The helpfulness test should be applied instead. The court stated:

> With respect to most crimes the credibility of a witness is peculiarly within the competence of the jury, whose common experience affords sufficient basis for the assessment of credibility. *In most cases, even though an expert's testimony may arguably provide the jury with potentially useful information, the possibility that the jury may be unduly influenced by an expert's opinion mitigates against admission.* Nor should the credibility of witnesses in criminal trials turn on the outcome of a battle among experts.

*Id.* at 609–610 (emphasis added).

Because the common experience of a jury would not represent an adequate foundation for assessing the credibility of a child who complains of sexual abuse, the expert testimony in *Myers* was admissible. *Id.* at 610.

> Background data providing a relevant insight into the puzzling aspects of the child's conduct and demeanor which the jury could not otherwise bring to its evaluation of her credibility is helpful and appropriate in cases of sexual abuse of children * * *.

*Id.*

Dr. Underwager's testimony did not concern H.H.'s conduct or demeanor. Instead, he was going to testify about certain characteristics of her speech. He would have testified that new words, lack of detail, and ambiguity in her speech indicate that she is not talking about actual events.

In *Myers*, it was because of the taboo against incest that the common experience of a jury did not include experience with the behavioral traits of a child sexual abuse victim. *Id.* at 610. Dr. Underwager's proffered testimony was not about aspects of speech unique to child sexual abuse victims. A jury would have had sufficient experience with children talking about events and their activities to have an "adequate foundation" for assessing H.H.'s credibility.

It was well within the jury's ability to assess H.H.'s credibility in the face of the defense theory that H.H. had been coerced and suggestively interviewed without learning about the psychological theory of "learned memory." Although testimony may not be properly excluded based *solely* on the fact that it *tends* to show that a witness is not telling the truth, the potential for unduly influencing the jury's credibility assessment in this case is too great for such arguably useful information.

Even under that portion of *Myers* most favorable to Erickson's position, the trial court did not err by excluding the testimony. We note that, even if the testimony met the helpfulness requirement of Rule 702, it was within the trial court's discretion to exclude it under Rule 403.

2. Erickson also claims that the evidence is insufficient to sustain his conviction by pointing to H.H.'s inconsistent and contradictory statements. Additional examples have been detailed in Erickson's pro se brief, which we have considered.

 If the jury, giving due regard for the presumption of innocence and the state's burden of proving guilt beyond a reasonable doubt, could reasonably conclude that defendant was proved guilty, its verdict will not be disturbed. *State v. Reichenberger*, 289 Minn. 75, 79, 182 N.W.2d 692, 695 (1970). The scope of appellate review is limited to determining whether, under the evidence presented, the jury could reasonably find the defendant guilty of the offense. *Id.*

In making its determination, the reviewing court construes the record most favorably to the state and assumes the evidence supporting conviction was believed and the contrary evidence disbelieved. *State v. Pieschke*, 295 N.W.2d 580, 584 (Minn.1980) (citations omitted). This is especially true where resolution of the case depends on contradictory testimony, because weighing the credibility of witnesses is the exclusive function of the jury. *Id.* Even inconsistencies in the state's case will not require reversal of the jury verdict. *Id.* (citing *State v. Bond*, 285 Minn. 291, 292, 173 N.W.2d 347, 348–49 (1969)).

In *Reichenberger*, a 13–year–old complainant told several different versions of the defendant's conduct, but her testimony was held sufficient to justify the conviction. 289 Minn. at 79, 182 N.W.2d at 694–95. In *Pieschke*, the court held that the jury was entitled to believe the more incredible of two conflicting versions of events. 295 N.W.2d at 584–85.

The jury heard the inconsistent and contradictory evidence. Although H.H.'s story about Erickson's sexual assaults changed over time, the jury was entitled to believe her. The jury was also entitled to disbelieve Himlie's version of her conversations with D.H. and Dr. Underwager's opinion that H.H.'s interviews were improperly suggestive. Testimony was presented that either an injury or sexual abuse could have caused H.H.'s scar. The jury could have reasonably believed that the scar resulted from the type of sexual abuse alleged. Because the jury could have reasonably found Erickson proven guilty, the evidence is sufficient to sustain his conviction.

## DECISION

The trial court did not err in excluding testimony regarding the suggestibility of unwanted children and the theory of "learned memory." The evidence is sufficient to support Erickson's conviction of first degree criminal sexual conduct.

Affirmed.