*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA**
**IN COURT OF APPEALS**
**A14-0076**

State of Minnesota,
Respondent,

vs.

Rajab Ibn Dawun Abdul Jabbar,
Appellant.

**Filed January 26, 2015**
**Affirmed**
**Halbrooks, Judge**
**Concurring in part, dissenting in part, Connolly, Judge**

Anoka County District Court
File No. 02-CR-13-3563

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Anthony C. Palumbo, Anoka County Attorney, Andrew T. Jackola, Assistant County Attorney, Anoka, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Andrea Barts, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Connolly, Presiding Judge; Halbrooks, Judge; and Bjorkman, Judge.

**U N P U B L I S H E D   O P I N I O N**

**HALBROOKS**, Judge

Following his conviction of felony violation of an order for protection (OFP), appellant argues (1) the evidence was insufficient to convict him when his stipulation to

previous qualified domestic-violence-related-offense convictions was inadequate or, in the alternative, his jury-trial waiver on this enhancement element was lacking; (2) the district court erred by admitting out-of-court statements made to responding police officers; (3) the district court erred by admitting evidence of prior 911 calls involving appellant and the complainant; and (4) the jury instructions on the elements of the crime constituted reversible error. We affirm.

## FACTS

On May 17, 2013, an OFP was in place prohibiting appellant Rajab Jabbar from any contact with K.R.D. or her residence. Shortly after 2:00 a.m. on that date, Columbia Heights police received a 911 report of a loud domestic disturbance at K.R.D.'s apartment building. When the first officer arrived, she drove from the front to the back of the building and encountered K.R.D. and her friend C.J. in the rear parking lot. K.R.D. was crying, pacing, appeared upset, and was uncooperative with the officer's efforts to gather information. C.J. was also pacing and looked "shocked."

Minutes later, Corporal Bonesteel arrived at the front of the apartment building and observed a short black male walking away.[1] Corporal Bonesteel continued to the rear parking lot and asked his partner if the suspect was still present. C.J. interjected, asking, "Oh, did he leave?" Corporal Bonesteel inquired whether C.J. was referring to "the male in the White Sox baseball hat, short in stature," and C.J. confirmed that she

---

[1] At trial, Corporal Bonesteel described the man's initial location as "right here on the sidewalk . . . between the two building[s]."

2

was.  Corporal Bonesteel attempted unsuccessfully to locate the man and then ran K.R.D.'s name in the records system.

He learned that there had been police calls to the same address involving K.R.D. and Jabbar and that K.R.D. had an OFP against Jabbar.  Corporal Bonesteel looked up Jabbar's driver's license photo and determined that Jabbar was the man he had seen walking away.  When asked by the officers who had been there, C.J. gave Jabbar's name.  Corporal Bonesteel and his partner checked the area again but did not find him.  When they returned to K.R.D.'s apartment, they learned that Jabbar had come back to the apartment, collected his cell phone, and left again.

The state charged Jabbar with felony violation of an OFP under Minn. Stat. § 518B.01, subd. 14(a), (d)(1) (2012), based on two prior convictions—felony violation of an OFP on May 9, 2004, and felony domestic assault on July 31, 2009.  Before trial, Jabbar's counsel notified the district court that Jabbar would stipulate to the existence of the OFP and the two previous qualifying convictions and asked that the previous convictions be kept from the jury.

At trial, C.J. and both officers testified, with C.J. as the state's first witness.  C.J. testified under subpoena and the threat of a bench warrant, asserting that she did not know Jabbar and that she just "threw a name out there" when the officers asked.  K.R.D. failed to appear at trial despite a subpoena and a bench warrant for her arrest.  In closing, defense counsel argued that no one had testified to seeing Jabbar and K.R.D. together in her apartment, only that he may have been seen outside "on the public sidewalk."  The

3

jury found Jabbar guilty as charged, and the district court sentenced him to 33 months in prison. This appeal follows.

## D E C I S I O N

### I.

Jabbar argues that his stipulation to the enhancement element—that he had been convicted of two qualifying domestic-violence-related offenses, the first of which occurred within ten years of the current charge—was inadequate and that therefore the evidence was insufficient to convict him. In the alternative, he argues that his jury-trial waiver on the enhancement element was inadequate.

**Stipulation**

The federal and Minnesota constitutions grant criminal defendants the right to a trial by jury for any offense punishable by incarceration. U.S. Constitution amend. VI; Minn. Const. art. 1, § 6. To obtain a conviction, the state must prove each element of the crime beyond a reasonable doubt. *State v. Auchampach*, 540 N.W.2d 808, 816 (Minn. 1995). A defendant may stipulate to an element of the offense, thereby "removing the issue from the case." *State v. Berkelman*, 355 N.W.2d 394, 397 (Minn. 1984). To obtain a conviction of felony violation of an OFP, one element the state had to prove was that Jabbar committed the crime within ten years of the first of two or more previous qualified domestic-violence-related-offense convictions. Minn. Stat. § 518B.01, subd. 14(a), (d)(1).

4

The parties agree that Jabbar stipulated that he was convicted of felony violation of an OFP on March 9, 2004.[2] The parties dispute whether Jabbar's oral stipulation was adequate with respect to (1) his conviction of felony domestic assault in 2009 and (2) whether the first of the qualifying convictions occurred within ten years of the charged offense. Our review of the transcript leads us to conclude that although the colloquy is not a model of clarity, when read in its entirety and in the context of the record, it is adequate to support Jabbar's stipulation to two previous qualifying convictions, the first of which occurred within ten years of the current offense.

Jabbar's counsel orally advised the district court that he and Jabbar had spoken and that Jabbar would stipulate to the existence of the OFP and the "two prior convictions," which "are elements of the State's case in chief," and asserted "[w]e would stipulate to those; that the State need not have to prove those. They are matters of fact." Jabbar's counsel then requested that the prosecutor not mention "the prior convictions" at trial. Counsel expressed that he "hope[d] Jabbar understands." The district court inquired of Jabbar whether he understood what his attorney had said, and Jabbar responded affirmatively.

The district court nevertheless attempted to elaborate on the mechanics of the stipulation, stating that without the stipulation, the prosecutor would have to prove that Jabbar "had already been convicted of a [felony OFP violation] back on March 9, 2004," and asked if he understood. Jabbar inquired why the jury would hear about a previous

---

[2] It is undisputed that felony violation of an OFP is a qualified domestic-violence-related conviction under Minn. Stat. § 609.02, subd. 16 (2012).

conviction involving an unrelated victim, and the district court stated that "any time there is another violation of an [OFP] after [a felony OFP-violation conviction], it is automatically a felony rather than a misdemeanor." Jabbar responded, "Yeah, I know that." The district court then explained that the purpose of the stipulation was so that the jury would not be aware of the previous felony OFP-violation conviction. Jabbar stated that he understood the district court's explanation.

The prosecutor then clarified that there were *two* previous qualifying convictions contemplated by the stipulation, and the district court stated, "I'm sorry. That's right. A felony domestic assault, that won't come in, nor will the [OFP]. Do you understand that?" Jabbar responded, "Yes." We are satisfied based on our review of the record that Jabbar's stipulation to the fact of two previous qualifying convictions was adequate.[3]

The express reference to the 2004 date of the earlier conviction also resolves Jabbar's argument about the ten-year window. Although the oral stipulation does not expressly provide that the first of the two convictions occurred within ten years of May 17, 2013, it identifies March 9, 2004 as the date of the previous felony OFP-violation conviction, and it is undisputed that the felony domestic-assault conviction occurred later. Shortly before the stipulation was put on the record, the district court orally reviewed Jabbar's criminal record while considering the state's motion to use Jabbar's previous convictions for impeachment purposes. The attorneys followed along and provided information from the court's record system when asked. The motion included only one

---

[3] It is undisputed that felony domestic assault is a qualified domestic-violence-related conviction under Minn. Stat. § 609.02, subd. 16.

6

felony domestic-assault conviction, and the district court specifically noted that it occurred in 2009.

We are satisfied based on our review of the transcript as a whole that Jabbar's stipulation to the existence of two previous qualifying domestic-violence-related convictions was adequate. Jabbar stipulated to facts sufficient to show that the first of the two previous qualifying convictions occurred within ten years of the charged offense. We therefore conclude that Jabbar's statements establishing the stipulation, viewed in the context of the record at the time of the stipulation, provide sufficient facts to support a conclusion that the enhancement element is proved.[4]

**Jury-Trial Waiver**

In the alternative, Jabbar argues that the district court committed reversible error when it accepted a stipulation on the enhancement element without securing his personal waiver of the right to a jury trial on the stipulated element. "A criminal defendant has a right to a jury trial that includes the right to a jury determination that the defendant is guilty of every element of the crime with which he is charged, beyond a reasonable doubt." *State v. Kuhlmann*, 806 N.W.2d 844, 848 (Minn. 2011) (quotation and citation omitted). A defendant's waiver of his right to a jury trial on any element of an offense

---

[4] We also note that if we had concluded that Jabbar's stipulation to the previous qualifying convictions was inadequate, we would have concluded that error did not affect Jabbar's substantial rights because the stipulation prevented highly prejudicial evidence being presented to the jury. *See State v. Hinton*, 702 N.W.2d 278, 281-82 (Minn. App. 2005) (applying harmless-error analysis to erroneous stipulation to an element), *review denied* (Minn. Oct. 26, 2005).

must be knowing, intelligent, and voluntary. *Id.* The Minnesota Rules of Criminal Procedure provide:

> The defendant, with the approval of the court, may waive a jury trial on the issue of guilt provided the defendant does so personally, in writing or on the record in open court, after being advised by the court of the right to trial by jury, and after having had an opportunity to consult with counsel.

Minn. R. Crim. P. 26.01, subd. 1(2)(a). Whether a criminal defendant has been denied the right to a jury trial is a constitutional question, which appellate courts review de novo. *State v. Shattuck*, 704 N.W.2d 131, 135 (Minn. 2005).

Here, although the district court explained that by entering into the stipulation, certain information would be withheld from the jury, it never directly explained that evidence of these elements was necessary for a conviction or that it was Jabbar's right to require the state to prove each element. And the only conversation on the topic was apparently at counsel table "in hushed tones," with Jabbar's counsel somewhat doubtful that Jabbar fully understood. We conclude that Jabbar did not validly waive his right to a jury trial on the previous-conviction element of the charged offense.

Because Jabbar did not object to the district court's failure to obtain his personal waiver of his right to a jury trial, our review is for plain error. *Kuhlmann*, 806 N.W.2d at 852. Plain error requires a showing of (1) an error; (2) that is plain; and (3) that affects substantial rights. *State v. Griller*, 583 N.W.2d 736, 740 (Minn. 1998). If these three prongs are satisfied, we assess whether to remedy the error to ensure fairness and the integrity of judicial proceedings. *Id.* We conclude that the district court's failure to obtain Jabbar's personal waiver of his jury-trial right on the enhancement element was an

8

error that was plain but was not prejudicial and did not affect the outcome of the case. Jabbar's stipulation to the existence of the OFP and the two prior convictions protected him from the possibility that the jury might improperly use the facts underlying the issuance of the OFP or the previous convictions as evidence that he committed the current offense. Also, Jabbar has never challenged the existence of the OFP or previous convictions, and the state could readily have proved each fact with certified records. Accordingly, it was in Jabbar's best interests to stipulate to these facts. *See Kuhlmann*, 806 N.W.2d at 853. Because we conclude that the jury-trial waiver error did not affect Jabbar's substantial rights, we need not decide whether the error seriously affects the fairness and integrity of judicial proceedings. *See id.*

## II.

Jabbar challenges the admission of various out-of-court statements made by C.J. and K.R.D.[5] But Jabbar did not object to the admission of any of the statements he now challenges on appeal. As a result, the district court had no opportunity to rule on the admissibility of the testimony.

Minnesota courts have noted the importance of objecting to potential hearsay evidence at trial due to the "complexity and subtlety of the operation of the hearsay rule and its exceptions," so that a "full discussion of admissibility [can] be conducted at trial." *State v. Manthey*, 711 N.W.2d 498, 504 (Minn. 2006). "Where an objection is not made, hearsay evidence will be admitted" if it "has probative force." *See State v. Hamilton*, 268

---

[5] The state does not argue that K.R.D.'s statements were properly admitted, and we note that the few statements she made were duplicative of those made by C.J. Our analysis therefore addresses only the challenged statements made by C.J.

N.W.2d 56, 63 (Minn. 1978) (citing *Gumphrey v. Gumphrey*, 262 Minn. 515, 115 N.W.2d 353 (1962). Because Jabbar did not object to the challenged testimony, and due to the importance of raising hearsay objections in district court to facilitate appellate review, we conclude that Jabbar has waived his hearsay challenges on appeal. Nevertheless, "[appellate courts] may consider an error not objected to at trial if there was (1) error, (2) the error was plain, and (3) the error affected the defendant's substantial rights." *State v. Tscheu*, 758 N.W.2d 849, 863 (Minn. 2008). We elect in this case to review the challenged testimony for plain error.

"'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Minn. R. Evid. 801(c). Hearsay is not admissible unless a recognized exception applies. Minn. R. Evid. 802. The state argues that the statements made by C.J. are present-sense impressions and are therefore non-hearsay under Minn. R. Evid. 801(d)(1)(D). We agree.[6]

A statement is not hearsay if "[t]he declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is . . . a statement describing or explaining an event or condition made while the declarant was perceiving the event or condition or immediately thereafter." Minn. R. Evid. 801(d)(1)(D). A "present sense impression" does not require the declarant to be in an

---

[6] The state also argues that the statements are admissible under the residual hearsay exception and, with respect to one statement, as an excited utterance. Because of our resolution of Jabbar's hearsay challenge, we need not reach the state's alternative arguments.

10

excited state. *State v. Pieschke*, 295 N.W.2d 580, 583 (Minn. 1980). In *Peischke*, our supreme court determined that oral statements made by vehicle passengers to responding officers within a few minutes of a collision were close enough in time to qualify as present-sense impressions under rule 801(d)(1)(D). But written reports made about an hour after the incident were too remote from the incident "to come within Rule 801(d)(1)(D)." *Id.* at 584. In a more recent case, a statement given at the scene of an assault by the victim, who later testified at trial, to a responding police officer was held admissible as a present-sense impression. *State v. Farrah*, 735 N.W.2d 336, 344 (Minn. 2007). A recording of a 911 call made by a testifying witness has also been deemed admissible as a present-sense impression. *State v. Taylor*, 650 N.W.2d 190, 205 (Minn. 2002).

C.J. testified at trial, and the out-of-court statements challenged on appeal were within the subject matter of her direct examination. She was therefore subject to cross-examination on these statements. Minn. R. Evid. 611(b). Having reviewed the record, we conclude that the statements C.J. gave to the responding officers at the scene are "statement[s] describing or explaining an event or condition."

The time frame in which the events occurred and the challenged statements were made was short. An anonymous person called 911 to report a loud domestic disturbance at approximately 2:00 in the morning. When the first officer arrived, K.R.D. was in the parking lot, crying and upset, and C.J. was with her. Corporal Bonesteel arrived two to four minutes later and saw Jabbar leaving the property. The challenged statements were made during the officers' initial interviews and after they checked the area unsuccessfully

11

for Jabbar. Although a declarant need not be excited or agitated for a statement to qualify as a present-sense impression, *Pieschke*, 295 N.W.2d at 583, the heightened emotional state of K.R.D. and C.J. here helps to establish the compact time frame of the underlying events and C.J.'s statements describing or explaining them. We conclude that the challenged statements were "made while [C.J.] was perceiving the event or condition or immediately thereafter," and C.J.'s statements are therefore present-sense impressions that are admissible as non-hearsay under Minn. R. Evid. 801(d)(1)(D).

**III.**

Jabbar challenges the admission over his objection of Corporal Bonesteel's testimony that "there had been other police calls involving both [K.R.D.] and her boyfriend, Mr. Jabbar." "Evidentiary rulings rest within the sound discretion of the [district] court and will not be reversed absent a clear abuse of discretion. On appeal, the appellant has the burden of establishing that the [district] court abused its discretion and that appellant was thereby prejudiced." *State v. Amos*, 658 N.W.2d 201, 203 (Minn. 2003) (citation omitted).

Jabbar argues that this evidence is inadmissible *Spreigl* evidence. We disagree. The fact that the police had previously responded to calls involving K.R.D. and Jabbar does not compel the inference that Jabbar committed bad acts on those previous occasions. And the testimony had a legitimate purpose—to explain the sequence of the investigation. But even if the testimony was in the realm of *Spreigl* evidence—or as the state argues, relationship evidence—the ultimate question is whether the testimony was unduly prejudicial. *See* Minn. Stat. § 634.20 (2012); Minn. R. Evid. 404(b).

12

Jabbar argues that he was unduly prejudiced because the testimony lacked relevance and "its only purpose was to paint Jabbar as a bad person." But in the context of the charged offense and Jabbar's stipulation to the existence of the OFP, we conclude that the prejudicial impact of this testimony did not outweigh its probative value. Even if this information was not strictly necessary to the state's case, we are not persuaded that the district court clearly abused its discretion by admitting testimony that the police had previously been dispatched to calls "involving" Jabbar and K.R.D. or that the verdict was affected by the testimony.

**IV.**

Jabbar argues that the district court committed reversible error by failing to instruct the jury that the state must prove that he "knowingly violated" the OFP.[7] Jabbar did not object to the jury instructions. "A defendant's failure to object to a jury instruction before [it is] given to the jury constitutes a waiver of the right to appeal," but "a reviewing court can reverse if the instruction constituted plain error." *State v. Prtine*, 784 N.W.2d 303, 316 (Minn. 2010). The parties agree that the district court erred in omitting the "knowingly violated" element from the instruction, and that this error was plain. We agree. We therefore "conduct a thorough examination of the record to determine whether the omission of an element of a charged offense from the jury instruction was sufficiently prejudicial in light of the standard of review." *State v.*

---

[7] The charged offense occurred on May 17, 2013. The statute was amended, effective August 1, 2013, to delete the word "knowingly." 2013 Minn. Laws ch. 47, § 1, at 203, and the standard jury instruction has been revised accordingly. 10 *Minnesota Practice*, CRIMJIG 13.54 (Supp. 2014).

*Watkins*, 840 N.W.2d 21, 28-29 (Minn. 2013). In conducting this review, we consider, among other factors, whether Jabbar contested the omitted element and submitted evidence to support a contrary finding and the strength of the state's evidence to prove the omitted element. *Id.* at 29.

Jabbar's theory of defense was that the state had not proved that he was at K.R.D.'s apartment or, if he was there, he was on the sidewalk, which he argued was not an OFP violation. Notably, unlike the defendant in *Watkins*, Jabbar did not argue at trial that he did not know that his contact would violate the OFP, nor did he present evidence that would support such an assertion. We therefore conclude that Jabbar did not contest the omitted element or submit evidence to support a contrary finding. *See id.* at 29.

In contrast, the state presented strong evidence that Jabbar knowingly violated the OFP by being inside K.R.D.'s apartment twice that night and by fleeing when police arrived. C.J. testified that from the parking lot, she heard K.R.D. having a loud and aggressive conversation in her second-floor apartment. She also testified that she told responding officers that Jabbar had been there. The officers likewise testified that C.J. had informed them that Jabbar had been at K.R.D.'s apartment. And Corporal Bonesteel testified that he saw Jabbar walking away from the building, identifying him by his driver's license photo. C.J. later informed the officers that Jabbar returned to the apartment while they were out looking for him and left again.

The state was required to prove that Jabbar perceived directly that his presence at K.R.D.'s building violated the OFP. *See id.* (interpreting the phrase "knowingly violates" contained in Minn. Stat. § 629.75, subd. 2(d) (2012)). Jabbar does not argue that he did

14

not know that being inside K.R.D.'s apartment would violate the OFP, offer any explanation for why he was seen outside K.R.D.'s building at 2:00 a.m., or explain how this was not "contact with K.R.D. or her residence." And the prosecutor argued at trial that Jabbar's flight when the first officer arrived showed that Jabbar knew that he was not supposed to be there. We conclude that the state presented overwhelming evidence that Jabbar knowingly violated the OFP on May 17. Because Jabbar did not argue or present any evidence that he did not "knowingly violate" the OFP and because there was overwhelming evidence to the contrary, we conclude that the jury's verdict here is not attributable to the unobjected-to erroneous omission of the mens rea element from the jury instructions.

**Affirmed.**

**CONNOLLY,** Judge (concurring in part, dissenting in part)

I concur in the portion of the opinion that concludes that the district court did not err in admitting the out-of-court statements made to responding police officers and by admitting evidence of the prior 911 calls. However, I respectfully dissent from the rest of the opinion and would reverse the conviction and remand for a new trial.

First, I believe the failure of the district court to personally secure the defendant's waiver of his right to a jury trial on the enhancement element of the crime constituted plain error. Plain error requires a showing of: (1) an error; (2) that is plain; and (3) affects a party's substantial rights. *State v. Griller,* 583 N.W.2d 736, 740 (Minn. 1998). It is well established that a defendant's waiver of his right to a jury trial on the elements of an offense must be knowing, intelligent, and voluntary. *State v. Dettman*, 719 N.W.2d 644, 651 (Minn. 2006). The waiver must be done "personally, in writing or on the record in open court, after being advised by the court of the right to trial by jury, and after having had an opportunity to consult with counsel." Minn. R. Crim. P. 26.01, subd. 1(2)(a). This did not occur. Appellant was not told that he had the right to a jury trial on the enhancement element of felony violation of an order for protection and did not personally waive that right. He was misadvised by the court about what the state was required to prove in order to establish the enhancement element. Indeed, he was not ever informed that the state was required to prove that he had two prior convictions within ten years of the charged offense. At one point after appellant spoke with his attorney briefly in a hushed voice, purportedly concerning this very issue, his attorney stated: "I hope he understands." This error also affected his substantial rights because the enhancement

element increased appellant's punishment from a misdemeanor sentence of 90 days to a felony sentence of 33 months in prison.

Next, the erroneous jury instruction also constituted plain error. Both parties agreed that the district court erred by omitting the "knowingly violated" element from the jury instruction. As with the enhancement-element error, I also believe this error affected appellant's substantial rights. In its closing argument, the state argued that appellant was guilty for being on the sidewalk that night based on the testimony that, "Corporal Bonesteel came and saw the defendant at [K.R.D.'s] residence." Appellant's primary defense was that the evidence did not prove that he was at K.R.D.'s that night. But, appellant also argued that if the jury believed he was there, appellant being on the sidewalk would not be a violation of the OFP because the OFP only said that he could not have contact with K.R.D.'s residence. This argument essentially asked the jury to find that appellant did not knowingly violate the OFP because the OFP stated he could not have contact with K.R.D.'s "residence," but it did not specify what "residence" meant. The OFP did not specify whether appellant was prohibited from having contact with K.R.D.'s apartment building or K.R.D.'s individual apartment, and it did not specify whether contact with the yard, parking lot, or sidewalk was included. If appellant being on the sidewalk was a violation of the OFP, it would not have been clear to him.

Appellant never conceded the intent element of the offense. He contested whether he knowingly violated the OFP and whether he violated the OFP. A properly instructed jury that believed Corporal Bonesteel's testimony could have believed that appellant was on the sidewalk at K.R.D.'s, accepted his defense that the OFP did not state that the

sidewalk was included in the definition of K.R.D.'s "residence", and found that he did not knowingly violate the OFP. *See State v. Watkins*, 840 N.W.2d 21, 30 (Minn. 2013) (holding that failure to instruct the jury on the "knowingly" element of violation of a domestic assault no contact order was plain error that affected defendant's substantial rights, requiring reversal and remand for new trial).

Finally, even if these two errors together did affect his substantial rights, then the cumulative effect denied appellant the right to a fair trial. *See In re Welfare of D.D.R.*, 713 N.W.2d 891, 903 (Minn. App. 2006) ("Appellant is entitled to a new trial if the errors, when taken cumulatively, had the effect of denying appellant a fair trial."). Accordingly, I would reverse the conviction and remand for a new trial.