*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-0578**

Timothy Neil Koebnick, petitioner,
Appellant,

vs.

Commissioner of Public Safety,
Respondent.

**Filed March 16, 2015
Affirmed
Bjorkman, Judge**

Carver County District Court
File No. 10-CV-13-1105

Richard L. Swanson, Chaska, Minnesota (for appellant)

Lori Swanson, Attorney General, Kristi Nielsen, Assistant Attorney General, St. Paul, Minnesota (for respondent)

Considered and decided by Hudson, Presiding Judge; Bjorkman, Judge; and Reyes, Judge.

## UNPUBLISHED OPINION

**BJORKMAN**, Judge

Appellant challenges the revocation of his driver's license, arguing the district court erred in concluding that he failed to establish that post-driving consumption of alcohol caused his alcohol concentration to exceed the legal limit. We affirm.

# FACTS

On September 12, 2013, Chaska Police Officers Michael Duzan and Joe Carlson responded to a 911 call regarding an unwanted male at a home in Chaska. When the officers reached the house at around 9:30 p.m., they found appellant Timothy Koebnick and his fiancé, J.P., standing in the front yard. J.P.'s three children, and her sister and brother-in-law, C.L. and S.L., were inside the house. Earlier that evening, Koebnick and J.P. had an argument, which prompted Koebnick to drive off in his truck around 9:00 p.m. Koebnick returned to the house approximately 20 minutes later, at which point J.P.'s son called 911.

Officer Duzan spoke with J.P. and Koebnick, while Officer Carlson interviewed the other witnesses inside the house. At one point, Koebnick walked away from Officer Duzan and toward the garage. Officer Duzan attempted to escort Koebnick away from the garage, but Koebnick physically resisted. Koebnick was subdued after a brief altercation and arrested for obstructing and threatening an officer.

Both officers noticed that Koebnick smelled of alcohol and had slurred speech. Due to these signs of intoxication and witness reports that Koebnick had been drinking before he left the house, Koebnick was also arrested for DWI. Officer Carlson read Koebnick the implied-consent advisory, and he consented to a breath test, which revealed an alcohol concentration of .16. Koebnick admitted to drinking before driving, but attributed his high alcohol concentration to the fact that he was drinking in the garage just before the police arrived.

Respondent Minnesota Commissioner of Public Safety revoked Koebnick's driving privileges pursuant to the implied-consent law, Minn. Stat. § 169A.50-.53 (2014). Koebnick petitioned for judicial review. At the implied-consent hearing, Koebnick argued that post-driving alcohol consumption caused his alcohol concentration to exceed the .08 legal limit.[1] The district court affirmed the revocation, finding that Koebnick's testimony regarding his post-driving alcohol consumption was not credible, that witnesses at the scene did not observe Koebnick drinking alcohol after driving, that there was only a brief period of time between when he returned home and when the police arrived, and that Koebnick "failed to show that such drinking caused his alcohol concentration to equal or exceed .08 at the time of testing." Koebnick appeals.

## DECISION

Post-driving consumption of alcohol is an affirmative defense to license revocation under the implied-consent statute. Minn. Stat. § 169A.46, subd. 1 (2014); *Dutcher v. Comm'r of Pub. Safety*, 406 N.W.2d 333, 336 (Minn. App. 1987). To prevail on this defense, a driver must establish by a preponderance of the evidence that (1) he consumed alcohol after the time of violation but before the administration of the breath test and (2) this post-driving consumption caused his alcohol concentration to meet or exceed .08 at the time of testing. Minn. Stat. § 169A.46, subd. 1; *Dutcher*, 406 N.W.2d at 336. Because the affirmative defense raises factual issues, we review the district court's determinations for clear error. *Dutcher*, 406 N.W.2d at 336.

---

[1] The parties stipulated to admission of witness statements in the police report that Koebnick did not consume any alcohol after he returned to the residence.

Koebnick argues that the district court clearly erred by finding that he did not prove that his post-driving consumption caused his alcohol concentration to exceed .08. We disagree. First, the undisputed evidence shows Koebnick was drinking before he operated his vehicle. Koebnick acknowledged that he drank vodka and Diet Coke in the garage before going on a walk with J.P. around 6:00 p.m. Although Koebnick stated that he only had two drinks, he admitted that he was uncertain about how much alcohol he consumed because he poured the vodka directly into the soda cans. J.P.'s son told Officer Duzan that Koebnick was drunk, and this was one factor that led him to call the police. And both officers testified that Koebnick appeared intoxicated when they first encountered him. Officer Duzan stated that Koebnick smelled of alcohol, had slurred speech, and "his eyes looked real watery and kind of sloped." Officer Carlson similarly testified that Koebnick "smelled of alcohol" and "[h]is speech was slightly slurred." These observations are consistent with consumption of alcohol over a period of time.

Second, the timing of the incident undercuts Koebnick's post-driving consumption argument. J.P.'s son called 911 as soon as Koebnick returned to the residence. Officer Duzan testified that dispatch contacted him at 9:33 p.m. and that he arrived at the house "probably three minutes" later, at which point he believed Koebnick had been home for "[a]pproximately four or five minutes." Koebnick was standing in the yard when the officers arrived, and Officer Carlson observed that the engine of Koebnick's truck was still warm and making noise. This brief window of time between Koebnick's return and law enforcement's arrival would have provided him with little opportunity to consume much, if any, alcohol.

4

Third, witnesses at the scene reported that Koebnick did not consume alcohol after he returned. Koebnick testified that he "guzzled" alcohol in the garage after he returned home. But none of the other witnesses or evidence substantiated this testimony. Officer Duzan testified that J.P.'s son said "[Koebnick] hadn't had anything to drink since he arrived" back home. C.L. and S.L. also reported that they did not see Koebnick consume alcohol after he returned home.

The only other evidence supporting Koebnick's post-driving consumption argument is J.P.'s testimony that she did not believe Koebnick was intoxicated when he left in his truck. J.P. explained that during their argument, she told Koebnick to leave, something she would not have done if she believed he was under the influence of alcohol. While J.P. may not have believed Koebnick was intoxicated when he left the house, she conceded that he had been drinking at some point before driving.

Finally, as the district court noted, even if Koebnick did consume alcohol after driving, the only evidence he presented to prove that this post-driving consumption caused his alcohol concentration to exceed the legal limit was his own testimony. The district court concluded that this testimony was self-serving and not credible. We defer to such credibility determinations, especially where, as here, they are supported by ample record evidence. *See State v. Pieschke*, 295 N.W.2d 580, 584 (Minn. 1980) (noting that it is the exclusive function of the fact-finder to weigh credibility).

On this record, we conclude that the district court did not clearly err in finding that post-driving consumption of alcohol did not cause Koebnick's alcohol concentration to exceed the legal limit.

**Affirmed.**